THE STATE OF OHIO, APPELLEE, *v.* HSIE, APPELLANT.

(No. 14-72-3—Decided June 26, 1973.)

APPEAL: Court of Appeals for Union County.

*Mr. Donald B. Ruben* and *Mr. Albert S. Rakas,* for appellant.
*Mr. Gary McKinley,* for appellee.

MILLER, J. Defendant, appellant herein, was tried by a jury and found guilty in two cases of the sale of marijuana in violation of R. C. 3719.44(D), and subsequently sentenced to the Ohio State Reformatory for a period of not less than 20 nor more than 40 years in each case, said sentences to run concurrently. From the sentences and judgments defendant appeals setting forth eight assign- ments of error.

Thomas Freshwater, alias Eli Cline, was employed as an undercover agent for the Union County Sheriff's Department and allegedly made purchases of marijuana from defendant on November 14, 1971, and on November 19, 1971.

One John Eleyet, a mutual acquaintance of both defendant and Freshwater, informed defendant of a possibility of a sale to Freshwater and on November 14, 1971, defendant, Eleyet and a Bill Weitzenecker came from Columbus, Ohio, to Marysville, Ohio, with one pound of marijuana which defendant states was deposited in a field near Marysville. They then went into Marysville, located Freshwater and, after some conversation, returned to the field where the marijuana was hidden and consummated the sale. While there is conflict in the evidence as to who actually handed the marijuana to Freshwater and received the money therefor, defendant admits ownership of the marijuana and receipt of a substantial portion of the sale price.

After one or more telephone calls from Freshwater to defendant, defendant, on November 19, 1971, drove to Marysville, met Freshwater in town and drove to a road in a rural area where the second sale was consummated. Again, there is a conflict as to the amount of marijuana involved (it being either one or two pounds) and the actual price paid for the same.

Defendant admits to the fact that the both sales were actually made.

Defendant first contends that the trial court erred in unduly limiting cross-examination of state's witness Freshwater by failing to enforce a *subpoena duces tecum* to produce tax returns and military records and in sustaining the prosecutor's objections to defendant's efforts to gain information contained in these records.

"Like other matters in the examination of witnesses, the course to be pursued in cross examination is a matter largely within the discretion of the trial court." 56 Ohio Jurisprudence 2d 740, Witnesses, Section 312.

The questions to which objections were sustained were mainly repetitions of questions which had already been answered and no abuse of discretion is apparent on the part of the trial court. See *Carey* v. *State,* 70 Ohio St. 121.

The right of compulsory process is inherent in the law of this state. See *Lancaster* v. *Green,* 175 Ohio St. 203.

Failure to obey a subpoena duly served may be punished as contempt of court. See R. C. 2705.02. However, defendant did not request the court to enforce the subpoena nor did he request the court to enforce contempt proceedings against the witness. His failure to raise the matter of enforcement of the subpoena amounts to a waiver and he cannot at this point insist that the trial court's inaction was prejudicial.

The first assignment of error is overruled.

Defendant contends that he was denied the right to prepare an adequate defense due to misrepresentations made by state's witness Freshwater at the preliminary hearing. There is no written record of his testimony at the preliminary hearing, but Freshwater admits to inconsistencies between that testimony and his testimony at the trial. This goes to the credibility of the witness and would not warrant a finding of error as a matter of law.

The record also reveals that defendant had knowledge of Freshwater's correct address.

Assignment of error number two is not well taken.

The third assignment of error asserts that the charge to the jury as to the defense of entrapment is vague and confusing and does not correctly state the law.

That portion of the charge as it relates to entrapment was given as follows:

"Now, the defendant has raised the defense of entrapment. The defendant denies any criminal intent and claims he is excused because he was entrapped by an act of the sheriff.

"Entrapment occurs when a law enforcement officer, or an agent thereof, plants in the mind of the defendant the original criminal intent, thereby inducing the defendant to commit a crime which he had not contemplated and which he would not otherwise have committed. If the defendant did not himself conceive the idea of committing the crime, and it was suggested to him by an officer or an officer's agent for the purpose of causing his arrest, the defendant must be found not guilty.

"However, if the defendant commits a crime while act-

ing—even in part—in carrying out his own plan or intent to violate the law, entrapment is not a defense even if the officer or the officer's agent suggested the crime and provided the opportunity, aided or encouraged its commission.

"Now the claim of entrapment is not an affirmative defense. It is a denial of intent as a result of different facts or circumstances.

"If from all the evidence, including that on the subject of entrapment, there is raised a reasonable doubt in your mind of the defendant's guilt, then you must return a verdict of not guilty. If the evidence does not establish the claim of entrapment, the burden of proof remains on the State to establish beyond a reasonable doubt all the essential elements of the crime charged in the indictment."

The foregoing instruction is taken to a large extent from 4 Ohio Jury Instructions 189, Section 411.25. This, however, neither guarantees that it is an accurate statement of the law or that, in the form stated, it is applicable to the factual situation of the cases in question.

The defense of entrapment was not known at common law and is of comparatively recent development. As known in the federal jurisdictions it is set forth in some detail in the case of *Sorrells* v. *United States*, 287 U. S. 435, as more fully explained in *Sherman* v. *United States,* 356 U. S. 369. Although Judges Skeel and Hurd in the case of *State* v. *Good,* 110 Ohio App. 415 disagree in its application, their respective opinions in that case are largely in detailed agreement as to its development in Ohio, which development conforms in most essentials with the federal development. We gather from these sources, as well as others, that contrary to the statement in the charge here used, entrapment is an affirmative defense available on a plea of not guilty, a defense which the defendant must prove, which issue, unless it can be decided by the court as a matter of law, is for the jury.

The defense of entrapment is in the nature of a confession and avoidance, it assumes that the act charged as a public offense was committed. In some jurisdictions it is not available to a defendant who denies that he committed the offense charged. *Henderson* v. *United States*

(C. C. A. 5), 237 F. 2d 169, and annotation thereof in 61 A. L. R. 2d 666, page 677, quoted in *State* v. *Good, supra.* See also *People* v. *Calcaterra,* 33 Ill. 2d 541, 213 N. E. 2d 270. As a confession and avoidance, here first asserted in defendant's opening statement with reference to each of the charges against him, defendant, in legal effect, admits that he committed each of the acts thus charged and he cannot, if he insists on the defense of entrapment, require the state to prove the commission by him of such acts, let alone require the state to prove such commission beyond a reasonable doubt as set forth in the last paragraph of that part of the charge (on entrapment) hereinbefore quoted. As a confession and avoidance, it also resolves against the defendant any of his assigned errors except as they relate to the existence of entrapment.

Additionally, the quoted charge on entrapment relates largely to the existence or absence of criminal intent. This court has previously held that the elements of the statutory crimes of which defendant was charged, violations of R. C. 3719.44, do not include any specific intent, the act of sale being a crime without respect to intent. *State* v. *Conley,* 32 Ohio App. 2d 54. Thus, the charge was erroneous in its application to the crimes charged.

However, all of these errors in the charge placed additional burdens upon the state and operated to the benefit of the defendant. So it cannot be said that the charge on entrapment in the form given was prejudicial to the defendant. Additionally, in the opinion of this court, defendant was not entitled to a charge of entrapment as to the first crime charged. The evidence shows that the state's agent and the defendant never met or communicated with each other before the defendant chose to make the sale then charged. At most, defendant claims he was motivated by the urgings of a mutual friend but not by any inducement of the state's agent. At most, the state's agent merely furnished the defendant the opportunity to commit the act constituting the first sale.

For these reasons, we conclude that the charge on entrapment, as given, was not prejudicially erroneous.

Defendant further contends that the two bags of mari-

juana should not have been admitted in evidence due to an improper and incomplete chain of evidence.

The evidence is in conflict as to what disposition was made of the marijuana which was purchased on November 14th between the time of purchase and delivery to the sheriff's department. If the jury were to believe state's witness Freshwater, the chain of evidence is complete, while, if the jury were to believe Donna Greunbaum, there are certain weaknesses in the chain. The evidence being in conflict, it was for the jury to determine its weight.

"Any weaknesses therein were matters attributable to the weight of the evidence and not matters conclusively requiring the exclusion of the exhibit[s] from evidence. *State* v. *Agner*, 30 Ohio App. 2d 96, 101."

Further substantiating the contentions of the state as to the identity of the matter in question is the defendant's statement that he sold the same in belief that it was marijuana.

Assignment number four is not well taken.

Assignments five, six and seven seek to raise the constitutionality of the 20 to 40 year sentences as being cruel and unusual punishment and the classification of marijuana with dangerous drugs as violating the due process and equal protection provisions of the United States Constitution and the Ohio Constitution. Since these issues were first raised in this court, we are without authority to consider the same.

The Court of Appeals of the Ninth Appellate District stated in *State* v. *McDonald*, 32 Ohio App. 2d 231, that "ordinarily questions not raised at trial cannot be raised for the first time on review" and "* * * this rule applies to the failure to assert constitutional rights." See also, *State, ex rel. King,* v. *Shannon*, 170 Ohio St. 393.

Assignments of error five, six and seven are overruled.

Finally, defendant contends that the state was engaged in irresponsible and deceptive practices and that defendant's conviction should be reversed, as a matter of public policy.

The use of undercover agents in the detection of drug

related offenses is not unique to this particular case. A thorough discussion of the use of such agents and the necessity therefor may be found in *State* v. *Good, supra.* See also *State* v. *Rowan,* 32 Ohio App. 2d 142 and *State* v *McDonald, supra.*

Defendant also relies on the fact that state's agent Freshwater may have been engaged in undesirable drug activity, a fact which he contends would necessitate a reversal of this matter on public policy. We note that in *State* v. *McDonald, supra,* the agent was under investigation by the police and in *State* v. *Rowan, supra,* the agent was under investigation by the grand jury. While in the instant case, Freshwater denies smoking marijuana or attempting to sell the same, it has been held that an undercover agent may, in order to give the appearance of validity to his conduct, smoke marijuana and sell or deliver drugs to others when the purpose of such conduct is to ferret out illegal drug traffic. See *State* v. *Rowan, supra.*

Further, while Freshwater admits inconsistencies between statements made at the preliminary hearing and those made at trial, this goes to credibility and is for the jury to determine. It is not within the province of this court to determine the credibility of witnesses or to substitute its judgment for that of the jury.

Assignment number eight is without merit.

The judgments of the trial court are affirmed.

*Judgments affirmed.*

GUERNSEY, P. J., and COLE, J., concur.