THE STATE OF OHIO, APPELLEE, *v.*
WHITESIDE, APPELLANT.

(No. 1-81-32—Decided February 16, 1982.)

*Mr. David E. Bowers,* prosecuting attorney, and *Mr. Brad C. Roush,* for appellee.

*Mr. David A. Little,* for appellant.

Cole, P.J. This is an appeal from a judgment of conviction and sentence by the Court of Common Pleas of Allen County of the defendant for the offense of voluntary manslaughter in violation of R.C. 2903.03 (A). The defendant was at the time of the offense and of the trial, and is now, a juvenile. The original charge was murder in violation of R.C. 2903.02 (A). No issue is raised by the appellant concerning the trial in the court of common pleas, general division, the assignments of error being directed to the action of the juvenile division in relinquishing jurisdiction to the court of common pleas, general division, to hear the matter. The specific assignments of error made by appellant are as follows:

"I. The Judge of the Allen County Common Pleas Court, Juvenile Division Erred When That Court Ordered on October 15, 1981, That All Juvenile Court Jurisdiction Over Defendant Be Relinquished and That Defendant Be Bound Over and Transferred to the General Division of the Allen County Common Pleas Court and to the Allen County Grand Jury To Be Tried, Treated, and Sentenced as an Adult Criminal Offender.

"II. The Judge of the Allen County Common Pleas Court, Juvenile Division Erred in Transferring Defendant for Trial as an Adult Because No Evidence or Testimony Submitted at the Hearing on Amenability to Treatment as a Juvenile Supported Said Order; and in Fact, the Evidence Was Substantially Contrary to the Court's Decision so That the Order Was an Abuse of Discretion.

"A. The Only Expert Evidence Supported Denial of the Motion to Transfer.

"B. Neither the Prosecutor Nor the Court Offered Evidence or Expert Comment to Repudiate or to Overcome the Weight of the Mandated Report.

"C. The Defense Produced Witnesses.

"D. The Court's Findings are Not Supported by Law or by Evidentiary Fact.

"E. Defendant Was Denied A Fair and Impartial Hearing.

"III. The Judge of the Allen County Common Pleas Court, Juvenile Division Erred Because the Court Never Ruled on Defendant's Motion to Dismiss the Motion for Transfer for Failure of the Allen County Prosecuting Attorney to File a Memorandum or Affidavit in Support of Said Motion.

"IV. The Judge of the Allen County Common Pleas Court, General Division, Erred in That Court's Order of April 3, 1981, Which Denied Defendant's Motion to Dismiss Indictment and/or Remand to Juvenile Court; Therefore, the Court Improperly Assumed Jurisdiction Which Had Not Legally or Validly Been Transferred to Said Court.

"V. The Final Order of the General Division of the Allen County Common Pleas Court Owes Its Standing to the

Previous Orders on Jurisdiction Which Were Improper, Invalid, and Unlawful Because the General Division Was Without Valid Jurisdiction to Try Defendant and Issue Said Order.

"VI. The Process for Relinquishment of Juvenile Jurisdiction and Transfer of an Alleged Delinquent Offender to an Adult Court is Unconstitutional as Written and/or As Applied in the State of Ohio."

The bulk of the appellant's arguments are directed specifically to the action of the juvenile division in relinquishing jurisdiction over the appellant to the general division in order that he might be tried as an adult. The argument as to lack of jurisdiction in the general division is based ultimately on this same contention. For this reason we will approach this basic problem first and conclude with comments as to the specific assignments of error.

In the case of *Kent* v. *United States* (1966), 383 U.S. 541 [40 O.O.2d 270], the United States Supreme Court considered the problems involved in relinquishment of juvenile court jurisdiction under a District of Columbia Juvenile Court Act. It concluded, at page 553, that such a provision may grant "considerable latitude within which to determine whether it should retain jurisdiction over a child * * *." But it added: "this latitude is not complete. At the outset, it assumes procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness, as well as compliance with the statutory requirements of a 'full investigation.' "

The court further said at page 557:

"* * * In these circumstances, considering particularly that decision as to waiver of jurisdiction and transfer of the matter to the District Court was potentially as important to petitioner as the difference between five years' confinement and a death sentence, we conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including

access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. * * *"

It further stated at page 561:

"Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not 'assume' that there are adequate reasons, nor may it merely assume that 'full investigation' has been made. Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor. We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact. But the statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review.

"Correspondingly, we conclude that an opportunity for a hearing which may be informal, must be given the child prior to entry of a waiver order. Under *Black,* the child is entitled to counsel in connection with a waiver proceeding, and under *Watkins,* counsel is entitled to see the child's social records. * * *"

Subsequently in 1969, the legislature in Ohio passed what is now R.C. 2151.26, which was subsequently amended in 1972 and 1978. The present version reads as follows:

"(A) After a complaint has been filed alleging that a child is delinquent by reason of having committed an act that would constitute a felony if committed by an adult, the court at a hearing may transfer the case for criminal prosecution to the appropriate court having jurisdic-

tion of the offense, after making the following determinations:

"(1) The child was fifteen or more years of age at the time of the conduct charged;

"(2) There is probable cause to believe that the child committed the act alleged;

"(3) After an investigation, including a mental and physical examination of the child made by the Ohio youth commission, a public or private agency, or a person qualified to make the examination, that there are reasonable grounds to believe that:

"(a) He is not amenable to care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children;

"(b) The safety of the community may require that he be placed under legal restraint, including, if necessary, for the period extending beyond his majority.

"(B) The court, when determining whether to transfer a case pursuant to division (A) of this section, shall determine if the victim of the delinquent act was sixty-five years of age or older or permanently and totally disabled at the time of the commission of the act. Regardless of whether or not the child knew the age of the victim, the fact that the victim was sixty-five years of age or older or permanently and totally disabled shall be considered by the court in favor of transfer, but shall not control the decision of the court.

"(C) The child may waive the examination if the court finds the waiver competently and intelligently made. Refusal to submit to a mental and physical examination by the child constitutes waiver of the examination.

"(D) Notice in writing of the time, place, and purpose of such hearing shall be given to the child's parents, guardian, or other custodian and his counsel at least three days prior to the hearing.

"(E) No child, either before or after reaching eighteen years of age, shall be prosecuted as an adult for an offense committed prior to becoming eighteen, unless the child has been transferred as provided in this section. Any prosecution that is had in a criminal court on the mistaken belief that the child was over eighteen years of age at the time of the commission of the offense shall be deemed a nullity, and the child shall not be considered to have been in jeopardy on the offense.

"(F) Upon such transfer, the juvenile court shall state the reasons for the transfer and order the child to enter into a recognizance with good and sufficient surety for his appearance before the appropriate court for any disposition that the court is authorized to make for a like act committed by an adult. The transfer abates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint.

"* * *"

In the present case there were two hearings, the first devoted to the question of probable cause and the second to the issue of relinquishment. The statutory requirements have been elaborated in Juv. R. 30 which provides for such a dual-hearing approach. This rule in part reads as follows:

"(A) Preliminary hearing. In any proceeding where the court may transfer a child fifteen or more years of age for prosecution as an adult, the court shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged and that such act would be a felony if committed by an adult. Such hearing may be upon motion of the court, the prosecuting attorney or the child.

"(B) Investigation. If the court finds probable cause, it shall continue the proceedings for full investigation. Such investigation shall include a mental and physical examination of the child by the Ohio Youth Commission, a public or private agency, or by a person qualified to make such examination. When the investigation is completed, a hearing shall

be held to determine whether to transfer jurisdiction. Written notice of the time, place and nature of the hearing shall be given to the parties at least three days prior to the hearing.

"(C) Prerequisites to transfer. The proceedings may be transferred if the court finds there are reasonable grounds to believe:

"(1) The child is not amenable to care or rehabilitation in any facility designed for the care, supervision and rehabilitation of delinquent children; and

"(2) The safety of the community may require that the child be placed under legal restraint for a period extending beyond the child's majority.

"* * *

"(E) Determination of amenability to rehabilitation. In determining whether the child is amenable to the treatment or rehabilitative processes available to the juvenile court, the court shall consider:

"(1) The child's age and his mental and physical health;

"(2) The child's prior juvenile record;

"(3) Efforts previously made to treat or rehabilitate the child;

"(4) The child's family environment; and

"(5) School record."

To narrow the issues somewhat under the statute there is no question as to the fact hearings were held, probable cause determined (and the evidence fully sustains such determination). The child was sixteen years of age or more at the time of the offense. It is further clear that an investigation pursuant to the statute and the rule was conducted and that a hearing was then held to determine the issue. No question is raised as to notice and the defendant was at all times represented by counsel.

Thus the problem narrows to the fundamental issue of whether or not the appellant was amenable to care or rehabilitation in any facility designed for the care, supervision and rehabilitation of delinquent children and that the safety of the community may require that he be placed under legal restraint, including if necessary, a period extending beyond his majority. Specific areas of consideration are mandated by Juv. R. 30 (E).

As to the court-imposed requirement that the hearing court set forth its reasons for choice, this was done at length and in detail by the court. This court also has before it a transcript of all the evidence including reports of investigation that were before the trial court.

First we note that an order of a juvenile division transferring a child to the court of common pleas, general division, is not a final appealable order. No appeal was possible prior to trial and conviction and hence the issue is properly raised at this time. *In re Becker* (1974), 39 Ohio St. 2d 84 [68 O.O.2d 50].

Similarly we have specific guidelines laid down by the Supreme Court of Ohio in the application of R.C. 2151.26. In *State v. Carmichael* (1973), 35 Ohio St. 2d 1 [64 O.O.2d 1], the court held in the syllabus:

"1. A hearing under R.C. 2151.26 is a preliminary stage of the juvenile judicial process and contemplates that the court should have considerable latitude within which to determine whether it should retain jurisdiction.

"2. What constitutes 'reasonable grounds' for relinquishing jurisdiction under R.C. 2151.26 (A)(3) is within the sound discretion of the court, after an 'investigation' is made."

In the opinion, the court clearly states the parameters and objective of the court's investigation and judgment. It is not necessary to determine that the child is not amenable to care or rehabilitation in an institution for delinquent children. Rather the court must determine that there are *reasonable grounds to believe* such is the case.

At page 6 of the opinion, it is stated:

"* * * However, the test the court is to apply under the statute is whether 'there are reasonable grounds to believe

that * * *.' Thus, the 'investigation' is not required to show that the child *cannot* be rehabilitated as a juvenile but only that there are reasonable grounds to believe that he cannot be rehabilitated."

Therefore the duty imposed upon the juvenile court by the statute is clearly established. That court must determine that there are reasonable grounds to believe that the child is not amenable to care or rehabilitation by a state institution designed for delinquent children and that the safety of the community may require legal restraint beyond the child's majority.

This then raises the question as to the precise meaning of the words "amenable to care or rehabilitation." The word "amenable" as here used is defined in Webster's Third New International Dictionary:

"2. a: capable of submission (as to judgment or test) [the data is—to analysis] b: readily brought to yield or submit: TRACTABLE [a child—to discipline] * * *"

Thus to narrow the issue further the duty imposed upon the court, before ordering a relinquishment of jurisdiction, is, after investigation, to find that there are reasonable grounds to believe that the child is one who will not be readily brought to yield, submit and respond to care, supervision and rehabilitation in any facility designed for such care of delinquent children and that the second requirement as to legal restraint exists. And as stated by the Supreme Court in *State* v. *Carmichael, supra,* the hearing to determine these issues is one wherein the juvenile court should have considerable latitude in its determination to retain or transfer jurisdiction, and the determination of what constitutes "reasonable grounds" under R.C. 2151.26 (A)(3) is within the sound discretion of the court after an investigation is made.

Juv. R. 30 (E) adds a further requirement setting forth certain items for consideration in making the decision as to the existence of reasonable grounds:

"(E) Determination of amenability to rehabilitation. In determining whether the child is amenable to the treatment or rehabilitative processes available to the juvenile court, the court shall consider:

"(1) The child's age and his mental and physical health;

"(2) The child's prior juvenile record;

"(3) Efforts previously made to treat or rehabilitate the child;

"(4) The child's family environment; and

"(5) School record."

All of these matters were in some form or another in evidence and it is presumed that the trial court considered them in carrying out its prescribed duties. Moreover, that court carefully covered each of these elements in its oral decision.

Thus the ultimate issue here for consideration narrows to the single question: was there evidence before the court which sustains a finding that there were reasonable grounds to believe the appellant would not be amenable to further care as a juvenile and that legal restraint was required?

We conclude such evidence was before the court. The appellant had a record as a juvenile delinquent and there was concrete evidence as to his lack of response to various types of juvenile care including on the last occasion some seven months' treatment at the Ohio Youth Commission. The evidence at the hearing to determine reasonable cause was before the court for consideration as it pertained to the issue now being considered. At the time of the current offense he was on parole from the Ohio Youth Commission. At the time of the charged offense he was under a curfew of ten o'clock weekdays and twelve o'clock weekends, and he was not to frequent a place where alcohol was served. At the hearing on probable cause it was established that the appellant violated his curfew and carried a loaded

revolver—a direct refutation of any contention he was responsive to the efforts of the youth commission. From this evidence it can reasonably be concluded, as did the juvenile court, that there were reasonable grounds to believe that appellant was not readily brought to yield, submit or be responsive to treatment as a juvenile delinquent. The circumstances surrounding the offense as revealed by the probable cause hearing further indicate reasonable grounds existed to impose legal restraints in the interest of public safety.

Some reference is made to the status of the evidence at the probable cause hearing as it pertains to the hearing on the issue of relinquishment of jurisdiction. The juvenile court obviously does not find as a fact that the accused minor is guilty of the offense charged. It simply finds the existence of probable cause to so believe and the juvenile court here on several occasions in its decision stated this distinction. However, the same evidence is pertinent to the issue, quite distinct from guilt or innocence, of whether reasonable grounds exist for believing the child is not amenable to care as a juvenile delinquent. Evidence as to his conduct is relevant to determine the responsiveness of the child to such treatment where, as here, he had already on several occasions been subjected to such care including institutional supervision and efforts at rehabilitation. This evidence provides potential proof as to the existence of "reasonable grounds" which is relevant to the inquiry and, under the circumstances here involved because of the prior efforts at rehabilitation, was clearly evidence from which it could be concluded there were reasonable grounds to believe the appellant was not responsive to such rehabilitation efforts.

We would therefore conclude that the judgment of the juvenile court, for the reasons here stated and for the reasons more fully and well-stated by that court in its decision was in accordance with the applicable statutes and within the boundaries of a sound judicial discretion.

Turning now to the specific assignments of error we find for the reasons stated Assignment of Error No. 1 is not well-taken. Similarly Assignment of Error No. 2 is not well-taken. The evidence as to past effects of treatment and attempts at rehabilitation coupled with the appellant's subsequent behavior are a sufficient basis, in the context of the entire hearing, to justify the action by the juvenile court. It is asserted that the only expert testimony supported denial of relinquishment. The witness, Waldo Buroker, who was a youth counselor for the youth commission, testified that in his belief the commission had no facility to rehabilitate anyone who has committed murder, and that the appellant was not amenable to treatment. Expert testimony is part of a total evidentiary picture and is not binding upon the court, but may be given appropriate weight by it. Similarly the report of investigation is one item of evidence. The ultimate judgment is that of the trial court and his judicial discretion may not be usurped by the opinions of experts. Such opinions are accorded appropriate weight by the court in weighing the totality of the evidence before it. We find no merit in the contention that the juvenile court denied the appellant a fair and impartial hearing for the reasons already stated.

Assignment of Error No. 3 is not supported by the record and is not argued or asserted by appellant.

Assignment of Error No. 4 concerns the action of the court of common pleas, general division, in denying appellant's motion to dismiss, or in the alternative, remand. We find no authority for appellant's position that the court of common pleas may review the factual findings of the juvenile court on the issue of amenability. In our opinion no such factual review is contemplated by the statutes and any such issue must be presented after trial on appeal to this

court. The jurisdiction of the court of common pleas is established by the order of the juvenile court relinquishing jurisdiction. We are cited to *State* v. *Fusik,* Cuyahoga C.P. No. CR 36387, unreported. We do not agree with the conclusion of that case that the court of common pleas may review the factual determination by the juvenile court in determining its own jurisdiction. The statutes clearly prescribe that this determination is made by the juvenile court and no statute provides for a review or rehearing of the issue in the court of common pleas, general division. We note that the general division court did review the procedural requirements imposed on the juvenile court and found that court had complied with all procedural requirements. This finding is sustained by the record. The assignment of error is not well-taken.

Assignment of Error No. 5 is based upon the issue of the jurisdiction of the court of common pleas to hear and determine the cause. We have previously indicated the action of the juvenile court in relinquishing jurisdiction is affirmed and this alone is essential to confer jurisdiction on the court of common pleas, general division. The assignment of error is not well-taken.

In Assignment of Error No. 6, the appellant attempts to raise certain constitutional issues which were not represented to or ruled upon by the trial court. Such issues cannot be raised initially upon appeal. *State* v. *Lane* (1976), 49 Ohio St. 2d 77 [3 O.O.3d 45]; *State* v. *Hsie* (1973), 36 Ohio App. 2d 99 [65 O.O.2d 99]; and *State* v. *McDonald* (1972), 32 Ohio App. 2d 231 [61 O.O.2d 252].

This court has consistently adhered to this principle. Constitutional issues raise broad issues which in most cases require factual exploration which is not possible upon review. Only by raising a constitutional issue in the trial court may a sound basis be established for consideration on review.

None of the errors assigned being well-taken, the judgment of the trial court is affirmed.

*Judgment affirmed.*

MILLER and GUERNSEY, JJ., concur.