OPINION
{¶ 1} Defendant-appellant Vaughn B. Kitchen appeals his conviction and sentence entered by the Ashland County Court of Common Pleas, after having pled guilty to involuntary manslaughter and aggravated arson. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On April 11, 2002, at approximately 4:00 a.m., a fire broke out at 118 South Park Street, Loudonville, Ohio. Edward Riffle, age 84, was later found in the residence and pronounced dead at a nearby hospital. Mr. Riffle's death certificate listed the immediate cause of death as a. asphyxia, due to (or as a consequence of) b. carbon monoxide poisoning, due to (or as a consequence of) c. smoke inhalation due to (or as a consequence of) d. house fire. In addition, coronary artery disease; CO-52% was listed as another significant condition contributing to death, but not resulting in the underlying cause.
 {¶ 3} On the date of the fire, appellant and his brother were taken into custody by the Loudonville Police Department. The Loudonville prosecutor and the police captain traveled to appellant's mother's residence and spoke with her concerning the fire and appellant's being in custody. Melanie Kitchen, appellant's mother, is a former police officer and Loudonville Police Department employee.
 {¶ 4} Ms. Kitchen spoke with appellant at the station, and appellant told her he set fire to a vehicle belonging to an individual named Tyler Riffle, and then went home.
 {¶ 5} On April 12, 2002, appellant was charged in the Juvenile Division of the Ashland County Court of Common Pleas with murder and aggravated arson, in violation of Ohio Revised Code Sections 2903.02(B) and 2909.02(A). Appellant was seventeen years old at the time.
 {¶ 6} On April 16, 2002, the State filed a motion requesting the Juvenile Division relinquish jurisdiction and bind appellant over to the General Division for trial as an adult. On June 2, 2002, the Juvenile Division held a hearing on the motion. The court found probable cause to believe appellant committed both offenses alleged, and relinquished jurisdiction pursuant to the mandatory bind over provisions of Section2152.12(A), based upon the probable cause finding with respect to the murder charge and the discretionary bind over provisions of Section2152.12(B), and the probable cause finding with respect to the arson charge and a finding the child was not amenable to rehabilitation in the juvenile system. The attorney appointed by the Juvenile Division was then permitted to withdraw.
 {¶ 7} On June 26, 2002, the Ashland County Grand Jury indicted appellant. The indictment charged murder, in alleged violation of Section2903.02(B) and aggravated arson, in alleged violation of Section2909.02(A)(1). The General Division appointed new trial counsel.
 {¶ 8} Appellant's counsel filed a speedy trial waiver on July 19, 2002, but did not file a motion to suppress or other dispositive pretrial motion.
 {¶ 9} On October 7, 2002, appellant plead guilty to aggravated arson, as charged, and involuntary manslaughter, a lesser included offense to the original murder charge, both felonies of the first degree.
 {¶ 10} On November 18, 2002, the trial court sentenced appellant to the maximum ten year sentences on each count and ordered the sentences served consecutively.
 {¶ 11} It is from this sentence appellant appeals, raising the following assignments of error:
 {¶ 12} "I. THE TRIAL COURT LACKED JURISDICTION OVER THE DEFENDANT DUE TO IMPROPER RELINQUISHMENT OF JURISDICTION BY THE JUVENILE DIVISION OF SAID COURT.
 {¶ 13} "II. THE DEFENDANT/APPELLANT WAS DENIED DUE PROCESS OF LAW AS THE RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 14} "III. THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT/APPELLANT TO CONSECUTIVE MAXIMUM SENTENCES, ABSENT SUFFICIENT EVIDENCE IN THE RECORD TO SUPPORT THE FINDINGS MADE BY SAID COURT IN JUSTIFICATION OF SAID SENTENCES."
 I {¶ 15} In his first assignment of error, appellant maintains the trial court lacked jurisdiction due to improper relinquishment of jurisdiction by the Juvenile Division.
 {¶ 16} R.C. 2152.12 sets forth the procedure regarding bindover. Section A addresses mandatory bindover:
 {¶ 17} "(A)(1)(a) After a complaint has been filed alleging that a child is a delinquent child for committing an act that would be aggravated murder, murder, attempted aggravated murder, or attempted murder if committed by an adult, the juvenile court at a hearing shall transfer the case if the child was sixteen or seventeen years of age at the time of the act charged and there is probable cause to believe that the child committed the act charged. * * *"
 {¶ 18} Section (B) sets forth the procedure as to discretionary bindover:
 {¶ 19} "(B) Except as provided in division (A) of this section, after a complaint has been filed alleging that a child is a delinquent child for committing an act that would be a felony if committed by an adult, the juvenile court at a hearing may transfer the case if the court finds all of the following:
 {¶ 20} "(1) The child was fourteen years of age or older at the time of the act charged.
 {¶ 21} "(2) There is probable cause to believe that the child committed the act charged.
 {¶ 22} "(3) The child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions.
 {¶ 23} "In making its decision under this division, the court shall consider whether the applicable factors under division (D) of this section indicating that the case should be transferred outweigh the applicable factors under division (E) of this section indicating that the case should not be transferred. The record shall indicate the specific factors that were applicable and that the court weighed."
 {¶ 24} As charged by the State in this case, the acts charged in count one of the complaint would constitute the offense of murder, if committed by an adult. The charge brings the case within the mandatory bindover provisions. The allegations set forth in count two of the complaint do not fall within the mandatory bindover provisions. Count two alleges appellant, as a juvenile, committed acts that would constitute the offense of aggravated arson, falling within the discretionary bindover provisions set forth above.
 {¶ 25} On June 3, 2002, the Juvenile Court conducted an evidentiary hearing on the State's motion to relinquish jurisdiction pursuant to R.C. 2152.12. The court found probable cause existed the appellant committed both murder and aggravated arson as alleged. The court further found the appellant not amenable to rehabilitation in the juvenile system. Relying on both R.C. 2152.12(A) and 2152.12(B), the Juvenile Division relinquished jurisdiction.
 {¶ 26} Appellant maintains the juvenile court erred in finding probable cause existed with respect to either charge. We disagree.
 {¶ 27} The Ohio Supreme Court held in State v. Iacona (2001),93 Ohio St.3d 83, 2001-Ohio-1292:
 {¶ 28} "As the court of appeals in the instant case correctly observed, a juvenile court at a bindover hearing need not "`find as a fact that the accused minor is guilty of the offense charged. It simply finds the existence of probable cause to so believe,'" quoting State v.Whiteside (1982), 6 Ohio App.3d 30, 36, 6 Ohio B. Rep. 140, 146,452 N.E.2d 332, 338. The juvenile court in the case at bar described its responsibility in considering the issue of probable cause as being an obligation to determine whether there is "some credible evidence as to each and every element of the offense." The court of appeals, on the other hand, defined "probable cause" as "a flexible concept, grounded in probabilities, requiring more than a mere suspicion of guilt but a degree of proof less than that required to sustain a conviction," citingBrinegar v. United States (1949), 338 U.S. 160, 175, 69 S.Ct. 1302,1310-1311, 93 L.Ed. 1879, 1890. These two standards, while subtly different, are not irreconcilable.
 {¶ 29} "We hold that the state must provide credible evidence of every element of an offense to support a finding that probable cause exists to believe that the juvenile committed the offense before ordering mandatory waiver of juvenile court jurisdiction pursuant to R.C.2151.26(B). See Zarzycki, A Current Look at Ohio's Juvenile Justice System on the 100th Anniversary of the Juvenile Court (1999), 47 Cleve.St.L.Rev. 627, 647. In meeting this standard the state must produce evidence that raises more than a mere suspicion of guilt, but need not provide evidence proving guilt beyond a reasonable doubt.
 {¶ 30} "Accordingly, in determining the existence of probable cause the juvenile court must evaluate the quality of the evidence presented by the state in support of probable cause as well as any evidence presented by the respondent that attacks probable cause. SeeKent, 383 U.S. at 563, 86 S.Ct. at 1058, 16 L. Ed.2d at 98."
 {¶ 31} In the case sub judice, the juvenile court complaint charged appellant with one count of murder in violation of R.C. 2903.02(B) and one count of aggravated arson in violation of R.C. 2909.02(A)(1). The elements of the offenses are set forth in the corresponding statutes. R.C. 2903.02(B) reads:
 {¶ 32} "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."
 {¶ 33} R.C. 2909.02(A)(1) provides:
 {¶ 34} "(A) No person, by means of fire or explosion, shall knowingly:
 {¶ 35} "(1) Create a substantial risk of serious physical harm to any person; * * *"
 {¶ 36} Appellant contends the evidence presented at the hearing suggested only appellant set fire to Tyler Riffle's car. He maintains there was no evidence the fire spread to a house, the car was near a house, or Mr. Riffle died or was endangered as a result of any act of appellant. Appellant argues the State failed to present testimony regarding the cause of Mr. Riffle's death. Accordingly, appellant asserts the bindover was improper and the General Division lacked jurisdiction.
 {¶ 37} At the bindover hearing, the State presented testimony from Todd McElwain, the paramedic responding to the Riffle fire, appellant's brother, and appellant's mother. Additionally, the parties stipulated to the death certificate of Edward Riffle.
 {¶ 38} Mr. McElwain works for the Village of Loudonville as a paramedic and he is also a volunteer firefighter. In his capacity as a paramedic and/or volunteer firefighter, McElwain responded to the fire at 118 South Park Street in Loudonville.
 {¶ 39} McElwain testified as follows:
 {¶ 40} "A. It wasn't on fire in the front. I know the fire was towards the rear of the residence.
* * *
 {¶ 41} "Q. Was there any additional structures in the back?
 {¶ 42} "A. I think there was a carport back there.
* * *
 {¶ 43} "A. I could just see the glow. It wasn't in the front of the house. That's the place I responded to was the front of the house on the second floor. I didn't go around to the back." Tr. at 11.
 {¶ 44} He also described Mr. Riffle's condition upon discovery:
 {¶ 45} "A. He was located on the stairway in between the first and second floor halfways up the stairway.
 {¶ 46} "Q. What was his condition when you found him?
 {¶ 47} "A. He wasn't breathing. Appeared to have second and third degree burns.
* * *
 {¶ 48} "Q. What was his condition en route?
 {¶ 49} "A. About the same as it was when we found him. He wasn't breathing. Second and third degree burns. We had to perform CPR on him." Tr. at 12-13.
 {¶ 50} At the hearing, Dean Kitchen, appellant's brother, testified regarding appellant's relationship with Tyler Riffle. Specifically, Dean Kitchen noted appellant did not get along with Tyler Riffle. Tr. at 20. He stated appellant had an argument on the telephone the day before the fire. Tr. at 21. He added:
 {¶ 51} "A. He said he was going to do something to Riffle's car. That was about it.
 {¶ 52} "Q. What did he say he was going to do to Riffle's car?
 {¶ 53} "A. Some damage mostly.
 {¶ 54} "Q. What's your understanding of what Molotov cocktail is?
 {¶ 55} "A. I know what they are. They're a bottle that has flammables in it and a rag. Light the rag, blows up the bottle, makes a big fire.
 {¶ 56} "Q. All right. Did Vaughn make mention of a Molotov cocktail?
 {¶ 57} "A. Yeah.
 {¶ 58} "Q. What was the context of that?
 {¶ 59} "A. Just saying he was going to throw it at the car.
 {¶ 60} "Q. And that would have been the day before the fire?
 {¶ 61} "A. Yes." Tr. at 22-23.
 {¶ 62} Further, Dean Kitchen testified the lamp oil kept in his bedroom was empty on the morning of the fire, and he was not sure where it went. Tr. at 24.
 {¶ 63} Melanie Kitchen, appellant's mother, testified at the relinquishment hearing concerning her conversation with appellant while he was in custody:
 {¶ 64} "A. At approximately 9:30 at night, Mr. DeSanto along with Captain Scott Shoudt arrived at my home. We had a discussion in my dining room concerning Vaughn. At that time they invited me to go back to the police department with them and speak to Vaughn.
 {¶ 65} "Q. And did you do so?
 {¶ 66} "A. Yes.
 {¶ 67} "Q. When you arrived at the police station, what did you do?
 {¶ 68} "A. I went into the back room, an interview room alone, and spoke with Vaughn. Mr. DeSanto and Captain Shoudt waited on the other side of the door in the dispatch area.
* * *
 {¶ 69} "Q. All right. Did you have a discussion with Vaughn in that interview room regarding the fire?
 {¶ 70} "A. Yes.
 {¶ 71} "Q. Did Vaughn disclose to you any information regarding that fire?
 {¶ 72} "A. yes.
 {¶ 73} "Q. What was disclosed to you?
 {¶ 74} "A. I attempted to have him tell me the truth concerning this incident. And he was very tearful and very upset. And had informed me that he had left our house at approximately 4:30 in the morning and with the intent to do damage only to the vehicle that belonged to Tyler Riffle.
 {¶ 75} "And he had gotten some lamp oil out of Dean's room. I don't know when that happened. I don't know whether it was that night or prior to Dean going to sleep. And then he proceeded down to the Riffle residence and threw some of the oil in the open windows of the vehicle and lit a match and then turned around and went home." Tr. at 38-39.
 {¶ 76} At the conclusion of the relinquishment hearing, the juvenile court via Judgment Entry found:
 {¶ 77} "The evidence presented at the hearing can best be described as minimal. The Court must consider that evidence which was presented and apply the applicable law. In doing so, the Court must determine whether the evidence presented by the State of Ohio is sufficient to meet all requirements as set forth in Section 2152.12 of the Ohio Revised Code, specifically including whether the evidence was sufficient to establish probable cause to believe that Vaughn B. Kitchen committed the acts charged in the Complaint."
 {¶ 78} * * *
 {¶ 79} "There was evidence presented that the fire at the Edward Riffle house was located in the back of the house. Further, there was some evidence that there is a carport located in the back of the Edward Riffle house. The Court can draw a reasonable inference as to the general use and purpose of a carport and that a car may be parked in that structure. Mrs. Kitchen testified that Vaughn Kitchen told her that he went to the Riffle residence at approximately 4:30 A.M. on April 11, 2002, where he threw oil into the vehicle of Tyler Riffle and then started the vehicle on fire before he walked away. The Court can draw an inference from that testimony that Vaughn Kitchen went to the Edward Riffle residence where he started the fire in the vehicle owned by Tyler Riffle." Judgment Entry at 2, 11.
 {¶ 80} Upon review, we agree with the trial court's finding of probable cause to believe appellant committed both offenses alleged, and find the court's relinquishment of jurisdiction proper pursuant to R.C.2152.12.
 {¶ 81} Appellant's first assignment of error is overruled.
 II {¶ 82} In his second assignment of error, appellant maintains he was denied due process of law as the result of ineffective assistance of counsel. Specifically, appellant submits counsel erred professionally infailing to file pretrial motions, including a motion to suppress the statements elicited from appellant by the prosecutor and appellant's mother.
 {¶ 83} The standard when reviewing an ineffective assistance ofcounsel claim is well-established. Pursuant to Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 682, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 84} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Id. at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. Statev. Carver (1995), 72 Ohio St.3d 545, 558.
 {¶ 85} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
 {¶ 86} We conclude appellant has not met the above standard. At the change of plea hearing on October 7, 2002, the following exchange occurred:
 {¶ 87} "THE PROSECUTOR: I'd indicate to the court for purposes of the record that the basis for the plea is that there would be a suppression issue before this court on the issue of invocation of Constitutional Rights in the course of the statements gathered from the defendant.
 {¶ 88} "I know that I believe Mr. Naumoff believes he's correct, the state certainly believes it to be correct, but the point is that someone would not be, and the court would be making that decision, and it could potentially effect the states case, and that is the basis for Mr. Naumoff, I believe, and the state reaching the negotiated plea that we've indicated to the court.
 {¶ 89} "Furthermore, we believe that we do give the court sufficient or at least substantial sentencing potential by affording the court up to 20 years should the court desire to do that.
 {¶ 90} "THE COURT: Mr. Naumoff.
 {¶ 91} "MR. NAUMOFF: That is also our understanding of the plea arrangement, Your Honor. At this time, Your Honor, we ask the court's permission to withdraw our former plea of not guilty to Count One, a charge of murder, and enter a plea of guilty to the amended charge of involuntary manslaughter. Also Count Two, aggravated arson, enter a plea of guilty to that charge." Change of Plea Hearing at 2-3.
 {¶ 92} The record clearly indicates appellant's change in plea to the amended charge and appellee's willingness to amend the murder charge to the lesser offense of involuntary manslaughter was based upon appellant waiving the suppression issue. Counsel's not filing a motion to suppress was clearly a tactical and strategic decision involved in the plea negotiation. Furthermore, we are not convinced had appellant filed a motion to suppress his statement, such motion would have been successful. Counsel is not ineffective in failing to file a motion which would not be successful.
 {¶ 93} Appellant's second assignment of error is overruled.
 III {¶ 94} In his third assignment of error, appellant contends the trial court erred in sentencing him to consecutive maximum sentences, absent sufficient evidence in the record to support the findings made in justification of the sentences.
 {¶ 95} Pursuant to R.C. 2953.08(G), our standard of review on this issue is clear and convincing evidence. R.C. 2929.14, which governs the imposition of a maximum prison term, reads in relevant part:
 {¶ 96} "(C) Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 97} The trial court need only find one of the factors set forth in the statute in order to impose the maximum term. In State v. Redman,
Stark App. No. 2002CA00097, 2003-Ohio-646, this court held:
 {¶ 98} "While a recitation of the statutory criteria alone may be enough to justify more than the minimum sentence, it is not enough to justify the imposition of the maximum sentence. The trial court also must provide its reasons. As stated in R.C. 2929.19(B)(2)(d): The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances: * * *
 {¶ 99} "(d) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term * * *
 {¶ 100} "Thus, a trial court has discretion to impose a maximum sentence if it determines one of the factors listed in R.C. 2929.14(C) exists, and it explains its reasons for imposing a maximum sentence as required by R.C. 2929.19(B)(2)(d). Accordingly, we must turn to the sentencing hearing to determine if the trial court stated its reasons for imposing the maximum sentence. If the trial court fails to provide such reasons, either orally or in the sentencing entry, the matter must be remanded for resentencing."
 {¶ 101} On November 18, 2002, the trial court sentenced appellant to two consecutive terms of ten years each, the maximum penalty available to the court under each count. In sentencing appellant the trial court found:
 {¶ 102} "Under recidivism likely, the following are noted. The offender does have the prior adjudications of delinquency and a significant history of juvenile criminal convictions. The court notes he has failed to respond favorably in the past to sanctions imposed for those criminal convictions, and he has had several violations.
 {¶ 103} "Under the seriousness factors, under the less serious, none are present. Under the more serious, the following are noted. Injury to the victim was worsened by the physical condition or age of the victim in that he was age 84. The victim did suffer death and serious economic harm as a result of this offense. The court would note that approximately $100,000 in damage was inflicted upon the property involved which did exceed the available insurance coverage by approximately $30,000.
 {¶ 104} "The court does note further that this offender was first placed on juvenile probation at the age of 13 and was first placed with the Department of Youth Services in Nevada at age 14. His record indicates that he has failed repeatedly while on probation and parole as a juvenile.
 {¶ 105} "Further, the court does note a history of failure to be able to abide by authority figures and a history of violence. Further, his history indicates prior attempts to treat his tendencies towards assaultive behavior have been met with a lack of willingness by this defendant to cooperate with the programs and therapies that were offered to him.
 {¶ 106} "The offender used alcohol and drugs and has not taken the advantage of programs offered to him in that regard. There is no indication he was under the influence of any substances on the night in question, and he denies the need for treatment at this time.
 {¶ 107} "Pursuant to Section 2929.13(D), there is a presumption of prison on each of these two offenses. The court finds there are insufficient factors opposed to a prison term, and therefore a prison term will be imposed in this matter.
 {¶ 108} "Pursuant to Section 2929.14(B), this court does find that the shortest prison terms would demean the seriousness of the offenses and would not adequately protect the public from future harm by this offender.
 {¶ 109} "Based upon the offender's prior record, his previously demonstrated inability to be rehabilitated and the seriousness of these offenses, this court does find pursuant to code Section 2929.14(C) that this offender does pose the greatest likelihood of committing future crimes, and, therefore, the longest prison terms available to the court are appropriate.
 {¶ 110} "Further, pursuant to code Section 2929.14(E), consecutive prison terms are necessary to protect the public; the court finds they are not disproportionate to the harm caused; and the court further finds both that this harm is so great that consecutive prison terms are necessary to adequately reflect the seriousness of the harm; and that this offender's criminal history is such that consecutive prison terms are necessary to adequately protect the public." Sentencing at 12-14.
 {¶ 111} Upon review, we find the trial court properly stated its reasons for imposing the maximum sentence pursuant to R.C.2929.19(B)(2)(d). The trial court's imposition of the maximum sentence was supported by clear and convincing evidence.
 {¶ 112} In order to impose consecutive sentences when an offender is convicted of multiple offenses, a trial court must first find consecutive service is necessary to protect the public from future crime or to punish the offender. R.C. 2929.14(E)(4). The court must also find consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Id. Finally, the trial court must find one or more of the following: a) the offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17 or 2929.18 of the Revised Code, or was under post-release control for a prior offense; b) the harm caused by the multiple offenses was so great or unusual no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct; or c) the offender's history of criminal conduct demonstrates consecutive sentences are necessary to protect the public from future crime by the offender. Id.
 {¶ 113} We find the trial court sufficiently set forth its findings under R.C. 2929.14 as noted supra, to justify the imposition of consecutive sentences.
 {¶ 114} Appellant's third assignment of error is overruled.
 {¶ 115} The November 18, 2002 sentence of the Ashland County Court of Common Pleas is affirmed.
By: Hoffman, P.J., Wise, J. and Boggins, J. concur.