OPINION *Page 2 
{¶ 1} The defendant-appellant, Salvatore Bombardiere ("Bombardiere"), appeals the May 25, 2006 Journal Entry of the Marysville Municipal Court of Union County, Ohio finding Bombardiere in violation of the terms of a Civil Protection Order and sentencing him to 180 days in TriCounty Jail with 30 days mandatory and 150 days suspended with a non-reporting probation so long as he provided proof that he resided in another state.
 {¶ 2} Bombardiere and Jamie Lynn Everett ("Everett") were in a relationship on and off between July 2002 and April 2004. Their relationship ended with a "physical confrontation" in April. Starting at the end of April, Everett stated that Bombardiere harassed and frightened her and her family members. He made constant phone calls to her parents' home and her cell phone. He posted signs and distributed fliers with her name and her parents' home phone number on them. He also sent mail to her home and to the home of a friend. Finally, Everett sought a civil protection order against Bombardiere which was issued on May 26, 2004 from the Delaware County Court of Common Pleas listing Everett as the protected person and restraining Bombardiere from having contact with her and requiring that he stay 500 feet away from her.
 {¶ 3} On June 23, 2006, Bombardiere went to the farm of Stephanie Griffith ("Griffith"), who was professionally associated with Everett. Everett *Page 3 
boarded her horses on the farm and traded her professional services at the farm three mornings a week from 9:00 a.m. till 12:00 noon for the value of the boarding. These responsibilities included cleaning the stalls, turning the horses out, and riding a few of the boarded horses.
 {¶ 4} Griffith testified that at 7:30 in the morning on June 23, 2006, she noticed a green car pull in her driveway and drive back to the barn and noticed that it did not drive out. At approximately 8:00 a.m., she saw that the car was still in her driveway so she and her son went out to the barn and approached the man. She said "hi" and asked if she could help him. He responded that he was there to look at a water problem that she seemed to be having. She responded by asking what water problem and who he was. He stated that he was a friend of a friend and would not tell her who he was. She then told him to get off of her property and grabbed her son and ran back to the house because he didn't look like he was dressed appropriately to be considering a water problem and he was evasive towards her.
 {¶ 5} She then wrote down his license plate number as he was pulling out of the driveway and called the Union County Sheriff's Department because she was concerned about his presence on her property. She gave a report to the Union County Sheriff's Department and warned everyone who had horses boarded at her barn to not be alone in the barn. Everett was informed of this and she asked *Page 4 
Griffith for a physical description of the man who had been on her property. Griffith provided Everett with a physical description of Bombardiere and verified that it was him when Everett showed Griffith a photograph of Bombardiere.
 {¶ 6} A few months later, Sergeant Eric Yoakam found out that Everett had been contacting the city about these matters when the incident actually took place in the county so he reopened the case and conducted further investigation regarding the June 23, 2006 events. Sergeant Yoakam of the Union County Sheriffs Department interviewed Griffith about the situation and called Bombardiere to interview him. During the interview, Bombardiere acknowledged that he was on Griffith's farm on June 23, 2006. In addition, he stated that he was aware of the Delaware County Civil Protection Order forbidding him from having contact with Everett. Furthermore, he acknowledged that he was not to be within 500 feet of her place of employment. However, Bombardiere argued that he went to the Griffith farm to make a recommendation about a water problem on the premises because he had been invited by Everett to come to the farm.
 {¶ 7} On January 6, 2006, a complaint was filed by Everett with the Union County Sheriffs Department alleging a violation of the Civil Protection Order. On May 25, 2006, a trial was held. At the conclusion of the bench trial, the trial court found Bombardiere guilty of recklessly violating a civil protection order. The trial court sentenced him to 180 days in TriCounty Jail with 30 days *Page 5 
mandatory and 150 days suspended with a non-reporting probation so long as he provided proof that he resided in another state.
 {¶ 8} On June 23, 2006, Bombardiere filed a notice of appeal raising the following assignments of error:
 Assignment of Error I There was insufficient evidence for the trial court to find defendant guilty of violating a temporary protection order and the trial court's verdict is against the manifest weight of the evidence.
 Assignment of Error II Ohio Revised Code Section 2919.27 is unconstitutional as it is applied to appellant and others similarly situated because it is vague and overbroad.
 {¶ 9} In Bombardiere's first assignment of error, he asserts that there was insufficient evidence for the trial court to find him guilty of violating a temporary protection order and the trial court's verdict was against the manifest weight of the evidence.
 {¶ 10} Pursuant to R.C. 2919.27(A),
 No person shall recklessly violate the terms of any of the following:
 * * *
 (2) A protection order issued pursuant to section 2903.213 or 2903.214 [Civil Protection Order]of the Revised Code * * *.
 {¶ 11} The Civil Protection Order issued on May 26, 2004 from the Delaware County Court of Common Pleas states: *Page 6 
 4. The subject is required to stay away from the residence, property, school, or place of employment of the protected person or other family or household member.
 5. The subject is restrained from making any communication with the protected person, including but not limited to, personal, written, or telephone contact, or their employer, employees, or fellow workers, or others with whom the communication would be likely to cause annoyance or alarm the victim.
 {¶ 12} In State v. Lucas (2003), 100 Ohio St.3d 1, 2003-Ohio-4778, an individual, as the protect subject of a protection order, invited the individual whom she had a restraining order against to her home for the birthday celebration of one of their children. The Supreme Court of Ohio held that "[t]he General Assembly has made the issue of an invitation entirely irrelevant as to the culpability of a respondent's violation of a protection order." Furthermore, "[t]he General Assembly has made an invitation by the petitioner for the respondent to violate the terms of a protection order irrelevant to a respondent's guilt. Protection orders are about the behavior of the respondent and nothing else. How or why a respondent finds himself at the petitioner's doorstep is irrelevant."
 {¶ 13} When reviewing whether a verdict is against the manifest weight of the evidence, the appellate court must review the entire record, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins (1997), 78 Ohio St.3d 380, 387, *Page 7 678 N.E.2d 541. In contrast, in State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 14} In this case, Bomberdiere testified to the following:
 Q: Okay. There was a civil protection order in place on June 23 rd, 2005, from Delaware County, is that correct.
 A: Correct.
 Q: And that civil protection order you were not to have any contact with Jamie Lynn Everett. You weren't to go to her place of employment, correct.
 A: I was not to initiate any contact with Jamie Lynn Everett or go to her place of employment. * * *
 * * *
 Q: And — and the person who you're not to have any contact with, you're not to go within 500 yard of her residence, or be on the grounds of her place of employment, or school, or day care center or any of that. You — you — even though she's the one that contacted you to go to this place, in response to that request, you went there?
 A: After a few times the request was made, yeah.
 Q: You're saying the request was made more than once?
 A: Yes, sir.
May 25, 2006 Trans. p. 97-99. Everett stated the following in her testimony: *Page 8 
 Q: Had you made any contact with the Defendant, and that's either direct or indirect contact, by e-mail, any kind of contact at all. Had you made any contact with the Defendant in the, let's say between January 1st of 2005 and June 23 rd of 2005?
 A: Not that I'm aware of.
 Q: What was the — when was the last time, if you know, that you — that you had made contact with the Defendant? That you initiated some kind of contact with him.
 A: The last time I initiated contact would be sometime in April of 2004.
May 25, 2006 Trans. p. 45-46.
 {¶ 15} Bombardiere also asserts that the State failed to put on any evidence that Bombardiere was properly served a copy of the civil protection order rather it only offered evidence that a civil protection order existed. He alleges that this does not meet the burden presented by the court in State v. Mohabir (January 7, 2005), 5th
App. Dist. No. 04CA17, 2005-Ohio-78, that an element of `violation of a temporary restraining order' required evidence that the due process mandates of R.C. 2919.26 were strictly followed in the issuance of the temporary restraining order.
 {¶ 16} Although there was no direct evidence in the record that specifically stated that he was served, he did readily admit in his testimony that he knew the terms of the civil protection order and of course, he appeared before the court in trial to vigorously defend himself against the allegations of violating the terms of the civil protection order. We conclude that this evidence was sufficient to establish that he did have adequate notice of the terms of the civil protection order. *Page 9 
 {¶ 17} In sum, in reviewing the totality of the evidence, we cannot conclude that the trial court clearly lost its way or created a manifest miscarriage of justice. Furthermore, after viewing the entire record and the evidence in the light most favorable to the State, we can say that a rationale trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, the first assignment of error is overruled.
 {¶ 18} Bombardiere alleges in his second assignment of error that R.C.2919.27 is unconstitutional as it is applied to him because it is vague and overbroad. He further asserts that R.C. 2919.27 is unconstitutional as it is applied to him because he was criminally punished because the victim manipulated him into violating the Civil Protection Order.
 {¶ 19} It is an established long standing rule of law in this state that a criminal constitutional question not raised in the trial court cannot be raised for the first time on review as previously established by this Court in State v. Terry, 3rd Dist. Nos. 3-05-25, 3-05-26, 3-05-27, 3-05-28, 3-05-29, 2006-Ohio-4320. See State v.Hsie (1973), 36 Ohio App.2d 99, 104.
 {¶ 20} Upon careful review of the trial court record, Bombardiere failed to raise in the trial court an issue regarding the constitutionality of R.C. 2919.27. He did not argue in the trial court that this statute is void for vagueness. Since the constitutionality of R.C. 2919.27 was not raised by Bombardiere in the trial court, *Page 10 
we find the constitutional issue has been waived, and we decline to consider it for the first time on appeal. See State v. Awan (1986),22 Ohio St.3d 120, 489 N.E.2d 277; State v. Petrusch (November 15, 1995), Montgomery App. No. 14983; State v. Thurman (June 28, 1995), Montgomery App. No. 14741. Accordingly, the second assignment of error is overruled.
 {¶ 21} For these reasons, the May 25, 2006 Journal Entry of the Marysville Municipal Court of Union County, Ohio is affirmed.
Judgment affirmed. PRESTON, J., concurs.
 ROGERS, P.J., dissenting.