[Cite as *State v. Garner*, 2020-Ohio-4939.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-18-1269

      Appellee                                      Trial Court No. CR0201703156

v.

Emmanuel Garner                              **DECISION AND JUDGMENT**

      Appellant                                     Decided:  October 16, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Timothy B. Hackett,
Assistant State Public Defender, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Emmanuel Garner, appeals the judgment of the Lucas County

Court of Common Pleas, convicting him, following an *Alford* plea, of one count of

felonious assault with a firearm specification, and one count of involuntary manslaughter

with a firearm specification, and sentencing him to a total prison term of 21 years. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} On September 25, 2017, two complaints were filed in the Lucas County Court of Common Pleas, Juvenile Division, charging the then 16-year-old appellant with acts that, if committed by an adult, would constitute murder in violation of R.C. 2903.02(B), and felonious assault with a firearm specification in violation of R.C. 2903.11 and R.C. 2941.145. The complaints stemmed from appellant's involvement in a shooting death that occurred the previous day.

{¶ 3} On September 29, 2017, the state filed a motion to transfer the case to the Lucas County Court of Common Pleas, General Division, so that appellant could be tried as an adult. On November 21, 2017, the juvenile court held a probable cause hearing on the motion to transfer in accordance with R.C. 2152.12 and R.C. 2152.10.

{¶ 4} At the November 21, 2017 hearing, the state presented two witnesses. The first witness to testify was J.H. J.H., then 13 years old, testified that on September 24, 2017, she and a number of other girls were fighting in the street in front of 1805 Macomber in Toledo, Lucas County, Ohio, when someone hit her friend's sister with a bicycle. At that point, someone told "Fatter" to shoot. J.H. identified appellant as "Fatter." J.H. testified that appellant and another person then began to fire guns, and J.H. recalled hearing two or three shots. According to J.H., appellant was standing on the stairs to the porch when he began firing.

2.

{¶ 5} One of the shots fired that day hit a victim, D.W., who was standing on the hill in the yard between the porch and the street. D.W. died as a result of her injuries. Another shot hit a second victim, T.Y., and injured her leg. T.Y. was standing on the hill near D.W. Appellant was also shot and injured in the leg.

{¶ 6} The last witness to testify was Toledo Police Detective Paul Marchyok. Marchyok coordinated the investigation at the scene of the shooting. Marchyok authenticated photos that were taken of the scene, showing eight 9-millimeter shell casings found at various positions near the front of the house by the porch, steps, and grass. Marchyok testified from his training, knowledge, and experience that the shooter was located at the front of the house, either on the steps or on the porch, and was firing towards the street area.

{¶ 7} Marchyok also authenticated photographs of bullet holes on the front of the house, which Marchyok testified would have come from a second shooter that was in the front yard area, firing back up towards the house. Lodged in a post was one of the projectiles that was fired at the house.

{¶ 8} The state then questioned Marchyok regarding State's Exhibit 16, which was an Evidence Technician Report authored by Detective Terry Cousino. In the report, Cousino details the shell casings that were found, as well as the location of the bullet holes on the front of the house, which "suggest[ed] that shots were fired both from and at the front of the house."

3.

{¶ 9} The state next presented to Marchyok State's Exhibit 17, which was a Toledo Police Laboratory Report. Marchyok testified that he requested the laboratory report because he knew from the evidence and the witness statements that there were two shooters, and he wanted to determine if the projectiles were from the same gun or different guns. The laboratory report compared the projectile that was lodged in the post with the projectile that was recovered from D.W., and reported that they were not from the same gun. The laboratory report concluded that the projectile lodged in the post was fired from a .38 or .357 caliber weapon, and the projectile recovered from D.W. was fired from a 9-millimeter weapon.

{¶ 10} Marchyok also authenticated photographs that showed blood droplets on the front porch, and in the kitchen and bathroom areas of the house. Marchyok testified that appellant was identified as the person that was shot on the porch through a video taken on J.H.'s phone, which depicted a person walking around in the house yelling that he's been shot, and then a female coming up and saying "Oh, they got Fatter. They got Fatter. Fatter got shot." Appellant sought medical treatment for the gunshot wound at Mercy St. Vincent's Hospital.

{¶ 11} Following the testimony, the state moved to admit its exhibits. Appellant objected to the admission of the exhibits "[o]nly with the extent that if there is any hearsay within hearsay that would not be allowed." The juvenile court noted appellant's objections and admitted the evidence. The court then took the matter under advisement.

4.

{¶ 12} The next day, the juvenile court found that there was probable cause to believe that appellant committed the offenses, and ordered the cases transferred to the general division for appellant to be tried as an adult.

{¶ 13} Ultimately, in the general division, appellant entered an *Alford* plea of guilty to one count of felonious assault in violation of R.C. 2903.11(A)(2) and (D), a felony of the second degree, with a firearm specification under R.C. 2941.145, and one count of involuntary manslaughter in violation of R.C. 2903.04(A) and (C), a felony of the first degree, with a firearm specification under R.C. 2941.145. At sentencing, the trial court ordered appellant to serve a total prison term of 21 years.

## II. Assignment of Error

{¶ 14} Appellant has timely appealed his judgment of conviction, and now asserts two assignments of error for our review:

I. Emmanuel Garner's Due Process and Confrontation Clause rights were violated when the government introduced forensic and ballistics findings through the surrogate testimony of a non-analyst police detective, in violation of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution; and Article I, Sections 10 and 16 of the Ohio Constitution.

II. Without the unconstitutional ballistics testimony, the juvenile court's probable cause finding was against the sufficiency and manifest weight of admissible evidence, in violation of the Fifth and Fourteenth

Amendments to the U.S. Constitution; and, Article I, Section 16 of the Ohio Constitution.

### III.  Analysis

{¶ 15} In his first assignment of error, appellant argues that his Confrontation Clause rights were violated when the juvenile court admitted the Evidence Technician Report and the Toledo Police Laboratory Report without the authors of those reports being available for cross-examination.  In his reply brief, appellant expands on his argument and asserts that due process requires an opportunity to confront and cross-examine the witnesses presented against him at the bindover hearing.  We disagree, and we hold that neither the Confrontation Clause nor the traditional notions of due process guarantee to appellant the right to confront and cross-examine the authors of the reports at the bindover hearing.

{¶ 16} At the outset, we note that appellant failed to object or raise the issue of his inability to confront and cross-examine the authors of the reports in the juvenile court. Thus, he has waived all but plain error.  *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 64-65 (holding that because the defendant did not raise to the trial court his claim of violation of his right to confront witnesses under the Sixth Amendment, "the claim is thus waived unless plain error is shown").  "An alleged error is plain error only if the error is obvious, and 'but for the error, the outcome of the trial clearly would have been otherwise.'"  (Internal citations omitted.)  *State v. Perez*, 124

6.

Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 181, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.

{¶ 17} The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Similarly, Article I, Section 10 of the Ohio Constitution provides, "In any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face." "Section 10, Article I provides no greater right of confrontation than the Sixth Amendment." *State v. Self*, 56 Ohio St.3d 73, 79, 564 N.E.2d 446 (1990).

{¶ 18} "[T]he Confrontation Clause bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, 984 N.E.2d 1057, ¶ 33, quoting *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Here, the parties do not dispute that the Evidence Technician Report and the Toledo Police Laboratory Report were testimonial statements, as opposed to nontestimonial statements not subject to the Confrontation Clause. Rather, the issue presented is whether the Confrontation Clause right applies in a juvenile bindover proceeding.

{¶ 19} We begin by noting that "[t]he right to confrontation is basically a trial right." *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). The juvenile probable cause hearing however is not a trial as it does not "find as a fact that the accused minor is guilty of the offense charged. It simply finds the existence of probable

7.

cause to so believe." *State v. Iacona*, 93 Ohio St.3d 83, 93, 752 N.E.2d 937 (2001), quoting *State v. Whiteside*, 6 Ohio App.3d 30, 36, 452 N.E.2d 332 (3d Dist.2001). In *Barber*, the United States Supreme Court recognized this difference in its determination that Barber's cross-examination of the witness during the bindover hearing would not have satisfied Barber's Confrontation Clause right to confront the witness at his subsequent trial. The court reasoned,

> [The right to confrontation] includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial.

*Barber* at 725.

{¶ 20} Consistent with *Barber*, federal courts have repeatedly recognized that the Sixth Amendment confrontation right does not apply to preliminary hearings. *See U.S. v. Colasuonno*, 697 F.3d 164, 177 (2d Cir.2012) ("[T]he full protections of the Confrontation Clause do not apply to preliminary hearings."); *Peterson v. California*, 604 F.3d 1166, 1169-1170 (9th Cir.2010) (under Supreme Court's Confrontation Clause jurisprudence, defendant was not constitutionally entitled to confront witnesses at his preliminary hearing, and the admission of hearsay statements at a preliminary hearing does not violate the confrontation clause); *U.S. v. Andrus*, 775 F.2d 825, 836 (7th

8.

Cir.1985) ("The right to confrontation applies when the ability to confront witnesses is most important—when the trier of fact determines the ultimate issue of fact. Consequently, the sixth amendment does not provide a confrontation right at a preliminary hearing."); *U.S. v. Harris*, 458 F.2d 670, 677 (5th Cir.1972) ("There is no Sixth Amendment requirement that [defendants] also be allowed to confront [witnesses] at a preliminary hearing prior to trial.").

{¶ 21} Nonetheless, appellant argues that the right to confront the witnesses against him should be extended to the bindover hearing because it is a "critically important proceeding," *Kent v. U.S.*, 383 U.S. 541, 560, 86 S.Ct. 1045 (1966), that potentially means "the difference between five years' confinement and a death sentence." *Id.* at 557. However, *Kent* expressly rejected the opportunity to "rule that constitutional guaranties which would be applicable to adults charged with the serious offenses for which Kent was tried must be applied in juvenile court proceedings concerned with allegations of law violation." *Id.* at 556. Rather, the court held "that the hearing must measure up to the essentials of due process and fair treatment." *Id.* at 562.

{¶ 22} Due process, though, is a "flexible concept that varies depending on the importance attached to the interest at stake and the particular circumstances under which the deprivation may occur." *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 22. "Applying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that

9.

are at stake." *Id.*, quoting *Lassiter v. Durham Cty. Dept. of Social Servs.*, 452 U.S. 18, 24-25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

{¶ 23} Embarking upon the uncertain enterprise of discovering what "fundamental fairness" consists of in the present case, we first note that appellant does not cite any precedent recognizing a Sixth Amendment confrontation right in preliminary hearings in general, or in juvenile bindover hearings in particular. To the contrary, the precedent establishes that the right to confront witnesses under the Sixth Amendment is a *trial* right, and is not applicable to preliminary hearings. Indeed, the Ohio Supreme Court has held, "[T]he constitutional provision according an accused the right to confront his accusers and the witnesses used against him * * * * relates to the actual trial for the commission of the offense and not to the preliminary examination where it is determined whether the accused is to be bound over to the Grand Jury." *Henderson v. Maxwell*, 176 Ohio St. 187, 188, 198 N.E.2d 456 (1964).

{¶ 24} Next, we find that although the bindover hearing is a "critically important hearing" that directs the proceedings down one of two paths with drastically different potential outcomes, appellant's liberty is not yet at stake. "The juvenile court has the duty to assess the credibility of the evidence and to determine whether the state has presented credible evidence going to each element of the charged offense, but it is not permitted to exceed the limited scope of the bindover hearing or to assume the role of the fact-finder at trial." *In re D.M.*, 140 Ohio St.3d 309, 2014-Ohio-3628, 18 N.E.3d 404, ¶ 10. "Determination of the merits of the competing prosecution and defense theories, both

10.

of which [are] credible, ultimately [is] a matter for a factfinder at trial." *State v. Iacona*, 93 Ohio St.3d 83, 96, 752 N.E.2d 937 (2001). Thus, further proceedings before a factfinder are required to determine whether appellant committed the charged offenses beyond a reasonable doubt.

{¶ 25} Finally, the fact that appellant is unable to confront the authors of the reports at the bindover hearing does not frustrate in any way his ability to confront and cross-examine them at the subsequent trial or delinquency hearing, where it is the most important. *See Kentucky v. Stincer*, 482 U.S. 730, 739-740, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (instead of distinguishing between a "trial" and "pretrial proceeding," it is more useful to consider whether the restriction "interferes with [the defendant's] opportunity for effective cross-examination").

{¶ 26} Therefore, we hold that appellant does not have a Sixth Amendment Confrontation Clause right or a due process right to confront the authors of the expert reports at the juvenile bindover hearing.

{¶ 27} In so holding, we reach the same conclusion as the Seventh District in *In re B.W.*, 2017-Ohio-9220, 103 N.E.3d 266, ¶ 41 (7th Dist.), in which the court held, "We do not believe the juvenile court (at a probable cause hearing held prior to transferring a juvenile to the general division) was bound by confrontation clause standards for admissibility of evidence."

{¶ 28} Accordingly, appellant's first assignment of error is not well-taken.

11.

{¶ 29} In his second assignment of error, appellant argues that without the expert reports, the evidence is insufficient to support the juvenile court's finding of probable cause, or alternatively that the juvenile court's finding of probable cause is against the manifest weight of the evidence. However, as stated above, we hold that the juvenile court did not err when it considered the expert reports. Thus, appellant's assignment of error is without merit. Furthermore, we hold that the evidence presented to the juvenile court was sufficient to establish probable cause to believe that appellant committed the offenses.

{¶ 30} "[W]hether the state has produced sufficient evidence to support a finding of probable cause in a mandatory-bindover proceeding is a question of law, and we review questions of law de novo." *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 47.

{¶ 31} Here, appellant was alleged to have committed the offense of murder in violation of R.C. 2903.02(B), which provides "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." Appellant was also alleged to have committed the offense of felonious assault in violation of R.C. 2903.11(A), which provides "No person shall knowingly do either of the following: (1) Cause serious physical harm to another or to another's unborn; (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

12.

**{¶ 32}** The evidence establishes that appellant was standing on the front porch of the house firing a 9mm gun towards the street while another individual was firing a revolver back up at him. Caught in the crossfire were two victims. A 9mm bullet struck one of the victims and killed her. Another bullet struck and injured the other victim. Based upon this evidence, we hold that the state produced sufficient evidence to support the juvenile court's finding that probable cause existed to believe that appellant committed the offenses.

**{¶ 33}** Accordingly, appellant's second assignment of error is not well-taken.

### IV. Conclusion

**{¶ 34}** For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

Christine E. Mayle, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

13.

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.