[Cite as *State v. Lamb*, 2021-Ohio-87.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


State of Ohio                                           Court of Appeals No. L-19-1177

    Appellee                                       Trial Court No. CR0201901111

v.

Marwan Lamar Lamb, Jr.                        **DECISION AND JUDGMENT**

    Appellant                                      Decided:  January 15, 2021

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, Timothy B. Hackett and
Abigail J. Christopher, Assistant Public Defenders, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a July 17, 2019 judgment of the Lucas County Court

of Common Pleas, determining that credible evidence of probable cause had been

presented at a bindover hearing in support of transferring one count of murder, in

violation of R.C. 2903.02, with an accompanying firearm specification, pending against appellant in the juvenile division, to the adult division of the Lucas County Court of Common Pleas. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, Marwan Lamb, Jr., sets forth the following five assignments of error:

I. [Appellant] was deprived of his right to due process and a fair hearing because the Lucas County juvenile court's probable cause determination was [unconstitutionally] based on tainted and unreliable identifications.

II. [Appellant's] due process and confrontation clause rights were violated when the government introduced anonymous crime stopper allegations through the surrogate testimony of an investigating detective [] .

III. The juvenile court erred when it [unconstitutionally] failed to assess key identification evidence for accuracy and reliability.

IV. [Appellant] was deprived of his right to the effective assistance of counsel in juvenile court [] .

V. The retroactive application of Ohio's violent offender registry [Sierah's Law] [is unconstitutional].

{¶ 3} The following undisputed facts are relevant to this appeal. This case arises from the March 17, 2018 shooting death of a man in an apartment complex parking lot

2.

located off of Door Street in Toledo during the course of a duplicitous marijuana purchase.

{¶ 4} The drug purchase was a subterfuge. It was solicited on Facebook for purposes of luring an unsuspecting drug seller to a designated location, at a designated time, to meet with a decoy buyer. The true purpose was to lay a trap in which the victim would be set upon by others during the meeting.

{¶ 5} On March 17, 2018, to set into motion the above-described plan, appellant and Randal Mullins went to the residence of a woman, Phenom Munn, to enlist her assistance. They directed Munn to make a posting on Facebook inquiring about anyone interested and able to sell marijuana to her that night. The victim responded.

{¶ 6} The victim notified Munn via Facebook that he was available to sell her the requested quantity of marijuana in the parking lot of an apartment complex located along Door Street in Toledo. The victim relayed a designated location and time for the proposed drug sale to Munn.

{¶ 7} Mullins instructed Munn to drive himself and appellant to the designated location in Mullins' vehicle. Shortly before driving into the apartment complex, Mullins instructed Munn to stop the vehicle and let appellant out. Appellant, armed with a loaded gun owned by Mullins, travelled the remaining distance on foot to the victim's location.

{¶ 8} As recorded by the apartment complex video surveillance cameras, Munn drove into the designated parking lot and parked. Munn exited the vehicle, approached the victim, and inquired whether the victim had a scale in order to weigh the drugs. The

3.

victim replied that he did not have a scale. Munn then told the victim that she needed to return to the vehicle to get additional cash to complete the purchase.

{¶ 9} After Munn returned to the vehicle, appellant ran up behind the victim brandishing a loaded firearm. Although the victim told appellant to just take the drugs and go, appellant shot the victim at point blank range, killing him.

{¶ 10} Following the shooting, Munn drove the vehicle a short distance from the complex, picked up appellant who had left the scene on foot, and drove off. Appellant had used a firearm owned and registered to Mullins. During the drive away from the scene, Munn heard Mullins castigating appellant for using Mullins' gun in the crime.

{¶ 11} In a failed attempt to obfuscate the police investigation into the crime, Mullins instructed Munn to make an additional Facebook post after the murder, falsely claiming that Munn had likewise been a victim in the incident.

{¶ 12} During the murder investigation, appellant's name was repeatedly relayed to the crime stopper tip line as a key figure in the crime. In addition, the police were directed to Munn's Facebook posts. Accordingly, the investigating detective interviewed Munn.

{¶ 13} Although Munn initially adhered to the plan to portray herself as another victim in the incident, she later revealed the truth about what had actually occurred to the investigating detective. Munn disclosed that her subsequent Facebook post was not true.

{¶ 14} In an initial photo array presented to Munn to gauge her truthfulness, she was shown photos of an ex-boyfriend and of the victim. She correctly identified both

4.

photos. In addition, a photo of an unknown man was shown to Munn. She correctly denied knowing the identity of that man.

{¶ 15} A separate detective subsequently presented Munn with a photo array of six male individuals of similar age, build, complexion, and hairstyle. Munn correctly identified appellant from the photo array.

{¶ 16} Munn revealed that she witnessed appellant shoot the victim. The shell casings recovered at the scene were a match to the gun used by appellant in committing the murder.

{¶ 17} Appellant, aged 17 at the time of the offense, was originally charged in the Lucas County Court of Common Pleas, Juvenile Division.

{¶ 18} On January 8, 2019, a bindover hearing was conducted for purposes of determining whether evidence of probable cause against appellant was presented, so as to warrant transferring appellant's case to the adult division for prosecution.

{¶ 19} The record reflects that during the bindover hearing, Munn provided detailed and clear testimony, supportive of a probable cause finding.

{¶ 20} Munn confirmed that, at the behest of Mullins, she arranged for the drug purchase meeting on Facebook, she drove appellant and Mullins to the scene, she dropped off appellant a short distance from the destination, she observed appellant come upon the victim from behind, and she saw appellant shoot the victim. Munn further testified that when she picked up appellant a few minutes after the shooting, she heard Mullins ask appellant, "Why would you shoot him with my gun?"

5.

{¶ 21} The record reflects that the investigating detective testified at the bindover hearing that he recovered shell casings at the scene which matched the gun used by appellant.

{¶ 22} The record reflects that the detective further testified that he recovered several cell phones from the victim which contained a series of text messages between Munn and the victim collaborating Munn's representation of the events. The detective also testified that he obtained the video surveillance from the apartment complex, which reflected the arrival of the vehicle at the scene of the crime just before it occurred, showed an individual running from the complex on foot after the shooting, and showed the departure of the vehicle from the scene shortly after the shooting.

{¶ 23} The record reflects that the timing of the events shown in the video footage is consistent with Munn's testimony.

{¶ 24} At the conclusion of the bindover hearing, the juvenile court determined that credible evidence had been presented of probable cause against appellant so as to warrant the transfer of the case to the adult division for prosecution.

{¶ 25} Subsequent to the transfer of the case, appellant entered a voluntary plea of guilty to one count of murder, in violation of R.C. 2903.02, a felony of the first degree, along with an accompanying mandatory firearm specification. Appellant was sentenced to a total term of incarceration of 16 years to life. This appeal ensued.

{¶ 26} In the first assignment of error, appellant maintains that the bindover hearing was unconstitutional, in violation of due process, based upon allegations of

6.

tainted and unreliable identifications. In response, appellee asserts that appellant's guilty plea waived all constitutional complaints about the bindover hearing.

{¶ 27} As a preliminary matter, we find that appellee's sweeping position regarding appellant's alleged waiver of constitutional concerns upon a guilty plea is misguided. As conveyed in response to an analogous contention in *State v. Hughes*, 10th Dist. Franklin No. 18AP-837, 2019-Ohio-4590, ¶ 3, "We dispense at the outset with the state's position that by pleading guilty [appellant] has waived his probable cause-based argument that he was denied due process * * * because a proper bindover procedure, which includes the determination of the existence of probable cause, is necessary to transfer jurisdiction, it cannot be waived."

{¶ 28} We concur in the *Hughes* position that appellant's subsequent guilty plea did not waive due process claims arising from the underlying bindover hearing.

{¶ 29} In conjunction with the above, we note that bindover hearings are non-adjudicative. Accordingly, such hearings are not determinative of one's guilt or innocence of the underlying offense.

{¶ 30} The threshold standard of evidence in support of a bindover request is that evidence of probable cause of appellant's actions constituting the elements of the offense have been presented. However, such evidence does not constitute evidence of guilt beyond a reasonable doubt, which must be demonstrated separately at a subsequent, adjudicative trial. *State v. Garner*, 6th Dist. Lucas No. L-19-1269, 2020-Ohio-4939, ¶ 19.

7.

{¶ 31} In consideration of the above, although we find that appellant is entitled to present due process claims in support of the first assignment of error, our review of the record reveals that appellant's claims, while legitimately presented on appeal, are nevertheless without substantive merit.

{¶ 32} In support of the first assignment, appellant maintains that the identification process in this case was unconstitutionally tainted and unreliable. We do not concur.

{¶ 33} For example, appellant contends that Munn's identification of appellant from a photo array presented to her was improperly suggestive based upon an assertion that the background ink on the photocopy of appellant's mug shot had slightly darker coloration in comparison to the other photocopied mugshots comprising the array.

{¶ 34} Our review of the photo array reflects that all six males presented are of similar age, height, build, complexion, and hairstyle. In the photocopying process, the background of not only appellant's photo printed off slightly darker, but several of the other photos contained in the array likewise had variable, darker background coloration. Appellant presents no evidence in support of the notion that the marginally inconsistent photocopy background shading, seen in multiple photos in the array, improperly impacted the identification process and/or prejudiced appellant.

{¶ 35} In addition, we note that Munn was acquainted with appellant. She drove him to and from the scene of the crime. This was not a scenario in which someone previously unknown to the witness was being selected from a photo array by that witness. In *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme

8.

Court enumerated five factors to consider in determining whether the identification was reliable. Key factors are the witness's opportunity to view (in the case of a voice identification, to hear) the defendant during the crime, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the witness's certainty, and the time elapsed between the crime and the identification. *State v. Patton*, 6th Dist. Lucas No. L-12-1356, 2015-Ohio-1866, ¶ 21-22, citing *Neil*, 409 U.S. at 199-200. Munn's close and personal involvement with appellant immediately before and after the homicide are factors that weigh heavily in favor of reliability.

{¶ 36} Appellant further argues that Munn's identification was unconstitutionally tainted based upon the innuendo that Munn may have been involved in a relationship with Mullins. We are not persuaded.

{¶ 37} Regardless of any prior involvement between Munn and Mullins, the bulk of the record of evidence supports the propriety of Munn's identification of appellant and her eyewitness testimony against appellant.

{¶ 38} Munn drove appellant to the scene of the crime, dropped appellant off a short distance away from where the crime occurred, observed appellant shoot the victim, picked up appellant, drove appellant away from the scene, and heard Mullins confront appellant about his use of Mullins' gun.

{¶ 39} We find that appellant has failed to demonstrate constitutional impropriety in connection to the identification of appellant. We find appellant's first assignment of error not well-taken.

9.

{¶ 40} In the second assignment of error, appellant similarly maintains that the bindover hearing was unconstitutional due to the presentation of testimony regarding anonymous crime stopper tips via the testimony of the investigating detective, rather than the direct testimony of those providing information to the tip line.

{¶ 41} Appellant asserts that his inability during the bindover hearing to confront and cross-examine those who furnished information about the crime to the tip line was unconstitutional. We do not concur. It has been well-established that the constitutional right to confrontation is a trial right and not a right that has been extended to preliminary proceedings. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). The Supreme Court of Ohio held that the right to confrontation relates to the actual trial for the commission of the offense and not to the preliminary examination where it is determined whether the accused is to be bound over to the grand jury. *Henderson v. Maxwell*, 176 Ohio St. 187, 188, 198 N.E.2d 456, 458 (1964).

{¶ 42} Appellant's position fails to recognize, as was discussed above, that bindover hearings are not criminal trials. They do not make determinations of one's guilt or innocence beyond a reasonable doubt of the charged offense.

{¶ 43} Rather, they are non-adjudicative probable cause hearings, making a preliminary determination as to which trial court, juvenile court or adult court, is the proper one in which to conduct the subsequent criminal trial.

{¶ 44} As held in *State v. Iacona*, 93 Ohio St.3d 83, 752 N.E.2d 937 (2001), "Determination of the merits of the competing prosecution and defense theories, both of

which are credible, ultimately is a matter for a fact finder at trial." Accordingly, had appellant chosen, appellant could have proceeded to a criminal trial in the adult division, at which time any constitutional claims regarding the sources of tip information about the crime could have been made.

{¶ 45} In the instant case, appellant declined to proceed to trial. Appellant entered a voluntary plea. As held under similar circumstances in *State v. Garner*, 6th Dist. Lucas No. L-19-1269, 2020-Ohio-4939, at ¶ 25, "The fact that appellant is unable to confront the authors of the reports at the bindover hearing does not frustrate in any way his ability to confront and cross-examine them at the subsequent trial."

{¶ 46} Given these facts and circumstances, we find that appellant has failed to demonstrate that the testimony regarding the crime stopper tips at the bindover hearing was unconstitutional. We find appellant's second assignment of error not well-taken.

{¶ 47} In appellant's third assignment of error, appellant similarly asserts that his constitutional rights were breached at the bindover hearing due to the alleged failure of the juvenile court to, "[M]eaningfully analyze the government's evidence for accuracy or reliability."

{¶ 48} Appellant takes issue with the juvenile court declining at the bindover hearing to make a determination regarding whether the evidence presented at the bindover hearing reflected appellant's guilt of the offense.

{¶ 49} We again note that appellant's position incorrectly imputes trial court level evidentiary obligations upon a non-adjudicatory proceeding. As stated in Garner at ¶ 19,

11.

"The juvenile probable cause hearing is not a trial as it does not find as a fact that the accused minor is guilty of the offense charged."

{¶ 50} It is not proper for a juvenile court to operate as a de facto ultimate trier of fact in the course of the bindover proceeding, as implied by appellant's position. We find appellant's third assignment of error not well-taken.

{¶ 51} In the fourth assignment of error, appellant maintains that he was denied the effective assistance of counsel during the juvenile court proceedings. We do not concur.

{¶ 52} It is well-established the demonstration of ineffective assistance of counsel requires showing that counsel erred in specific ways, and that, but for those demonstrated errors, the outcome of the matter would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 53} The propriety of appellant's position in the fourth assignment of error is contingent upon this court finding in favor of appellant in response to appellant's allegations set forth in the first three assignments of error.

{¶ 54} Given that this court has found no impropriety by the juvenile court in the bindover proceedings, appellant cannot show that the outcome would have been different but for meritless objections being made to acceptable actions of the juvenile court.

{¶ 55} We find appellant's fourth assignment of error not well-taken.

12.

{¶ 56} In appellant's fifth assignment of error, appellant asserts that the application of the R.C. 2943.01 violent offender registry (VOD) to appellant following his conviction was unconstitutional.

{¶ 57} Currently pending before the Ohio Supreme Court is a certified conflict between the Courts of Appeals for the Twelfth and Fifth Districts on the issue whether the VOD statutes, when applied to an offense that occurred before the statutes' March 20, 2019 effective date, violate the prohibition against retroactive statutes contained in Article II, Section 28, of the Ohio Constitution. *See State v. Hubbard*, 159 Ohio St.3d 1427, 2020-Ohio-3473, 148 N.E.3d 568 (Table); *State v. Jarvis*, 159 Ohio St.3d 1427, 2020-Ohio-3473, 148 N.E.3d 568 (Table). *See also State v. Rike*, 1st Dist. Hamilton No. C-190401, 2020-Ohio-4690 (finding no retroactivity-clause violation); *State v. Jackson*, 10th Dist. Franklin No. 19AP-393, 2020-Ohio-4115 (declining to decide retroactivity-clause challenge upon determining that the case was not ripe for decision); *State v. Morgan*, 2020-Ohio-3955, 156 N.E.3d 989 (9th Dist.) (finding no retroactivity-clause violation). *State v. Klein*, 1st Dist. No. C-190619, 2020-Ohio-6948, ¶ 16.

{¶ 58} Until the Supreme Court resolves this conflict, we are inclined to follow the position of a majority of our fellow appellate districts and find that the VOD statute before us as applied is remedial in nature and therefore find it to be constitutional, utilizing the same logic employed by the court in *Hubbard:*

Given the many differences between the sex-offender registration statutes and the violent-offender enrollment statutes, we find that the

13.

violent-offender enrollment requirements are not so punitive that they impose a new burden in the constitutional sense, as contemplated in *Williams*. Rather, we find that the violent-offender enrollment requirements are more akin to the arson-offender registration requirements set forth in R.C. 2909.13, 2909.14, and 2909.15, which the First District found were remedial in nature. *See Caldwell*, 2014-Ohio-3566, 18 N.E.3d 467 at ¶ 33-35. Accordingly, as appellant had no expectation of finality with regard to any duties that may or may not have attached following his conviction for murder, he does not have a substantive right in this regard. See *id*. at ¶ 35*; Cook*, 83 Ohio St.3d at 414, 700 N.E.2d 570. The violent-offender enrollment statutes are remedial in nature, and the General Assembly could retroactively impose Sierah's Law without running afoul of Article II, Section 28 of the Ohio Constitution. *State v. Hubbard*, 2020-Ohio-856, ¶ 37, 146 N.E.3d 593, 604, motion to certify allowed, 2020-Ohio-3473, ¶ 37, 159 Ohio St. 3d 1427, 148 N.E.3d 568, and appeal allowed, 2020-Ohio-3473, ¶ 37, 159 Ohio St. 3d 1427, 148 N.E.3d 569. *Hubbard*, at Paragraph 37.

{¶ 59} Therefore, we find Lamb's fifth assignment of error not well-taken and it is denied.

14.

{¶ 60} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

_____
JUDGE

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.