[Cite as *State v. Courts*, 2022-Ohio-690.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellee,         :

                                     No. 110368

    v.                          :

JASHON COURTS,                    :

    Defendant-Appellant.        :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 10, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-646189-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and John Farley Hirschauer, Assistant Prosecuting Attorney, *for appellee.*

Richard E. Hackerd, *for appellant.*

FRANK D. CELEBREZZE, JR., P.J.:

{¶ 1} Appellant Jashon Courts ("appellant") appeals the probable cause and amenability determinations by the Cuyahoga County Juvenile Court and his sentence by the General Division. Appellant contends that he was denied due process at his probable-cause hearing, that his counsel was ineffective by failing to

object to hearsay evidence, that the juvenile court abused its discretion in finding that he was not amenable to rehabilitation, and that his indefinite sentence under the Reagan Tokes Act was unconstitutional. After a thorough review of the facts and applicable law, we affirm the judgments of the juvenile court and general division.

## I. Factual and Procedural History

{¶ 2} This case arises from appellant's conviction for involuntary manslaughter and receiving stolen property, along with firearm specifications. The facts underlying appellant's conviction are as follows:

{¶ 3} On July 15, 2019, Cleveland Heights police responded to a shooting at 2885 Mayfield Road. The 16-year-old victim, Takim Brown, was located in the street in front of Heights Deli and Market ("Deli"). Brown had sustained a gunshot wound to his torso and later died from his injuries.

{¶ 4} Police were able to obtain high-definition surveillance video and audio from both inside and outside of the Deli. The video depicted appellant and three other males arriving at the Deli in a Ford Escape. The vehicle was later determined to have been stolen.

{¶ 5} As appellant entered the Deli, there appeared to be a square object protruding from the right front pocket of his jeans. A few minutes after appellant entered the Deli, Brown was seen engaging in a conversation with several other males. Appellant and his companions then exited the Deli and exchanged words with Brown. As Brown, appellant, and the others rounded the corner, Troyann Berger and Jamarri Harper followed the group. Seconds after the group rounded

the corner, a gunshot rang out, and Brown can be seen stumbling into the street and collapsing. Appellant and his group then sped away in the Ford Escape.

{¶ 6} Due to the high quality of the surveillance video, the police were able to immediately begin identifying the witnesses, suspects, and victim. Police presented still frames and other photographs of the suspects to Troyann Berger and Jamarri Harper, who were in a position to see the crime. They both agreed that appellant, who they knew as "Dooder," withdrew a firearm and shot Brown. They further told police that Daqwan Smith, who they knew as Dae-Dae, told appellant to shoot the victim.

{¶ 7} Appellant was later arrested by Cleveland police and turned over to the Cleveland Heights Police Department. At the time of arrest, appellant appeared to be wearing the exact same sandals that he was seen wearing in the surveillance video from the incident.

{¶ 8} Because appellant was 15 years old at the time of the offense, his age qualified the case as a discretionary bindover. The juvenile court held a probable-cause-determination hearing. Appellant was referred to the diagnostic clinic for a psychological evaluation pursuant to Juv.R. 30.

{¶ 9} The juvenile court held an amenability hearing for appellant. The state called appellant's probation officer and Brown's sister as witnesses. Appellant's probation officer testified as to appellant's history in the juvenile system. Appellant's first contact with the juvenile system was for charges of vandalism, a felony of the fifth degree, and receiving stolen property, a felony of the fifth degree.

In August 2018, he was placed on probation and ordered to pay restitution for these charges. Appellant later tested positive for marijuana on a random drug screen and was referred for a substance-abuse assessment. It was recommended that he participate in counseling, but he did not follow through with it.

{¶ 10} The court had imposed community service and ordered restitution; appellant did not comply with either term. After only one month of being on probation, appellant was charged with theft, a felony of the fifth degree. Appellant also had an additional case for charges of theft, a felony of the fourth degree, and failure to comply, a felony of the third degree. Appellant failed to appear three times for his arraignment on the additional case, and a warrant was issued for his arrest. He was not picked up until several months later, at which time he was placed in the detention center, then released on home detention. Before he had been picked up, he had also been charged with improper handling, a felony of the fourth degree.

{¶ 11} Appellant was adjudicated delinquent in the theft case, and the juvenile court recommended that he attend the Cognitive Behavioral Intervention Center ("CBIC") which typically lasts around ten weeks to complete. Appellant began the CBIC program right away, but he only lasted for four weeks. Appellant cut off his ankle monitoring bracelet and went AWOL from the program. The juvenile court did not have any contact with appellant again until he was remanded to the detention center for the present case.

{¶ 12} After the parties rested at the probable-cause hearing, the juvenile court outlined its findings with regard to the factors under R.C. 2152.12 in favor of transfer to the general division as follows:

> **Factor 1 (met):** The victim of the act suffered physical or psychological harm or serious economic harm as a result of the alleged act.
>
> **Factor 2 (not met):** The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.
>
> **Factor 3 (not met):** The child's relationship with the victim facilitated the act charged.
>
> **Factor 4 (not met):** The child allegedly committed the act charged for hire or as part of a gang or other organized criminal activity.
>
> **Factor 5 (met):** The child had a firearm on or about his person or under his control at the time of the act charged, and during the commission of the act, allegedly used the firearm or displayed the firearm, brandished the firearm, indicated that the child possessed the firearm.
>
> **Factor 6 (met):** At the time of the act charged the child was awaiting adjudication or disposition as a delinquent child, was under community control sanction, or was on parole for a prior delinquent child adjudication or conviction. The child was both on probation from the juvenile court and awaiting disposition on other charges.
>
> **Factor 7 (met):** The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system. The court found that this factor was satisfied because of (1) the child's history of going AWOL and that the child had previously cut his monitor off while on home detention; (3) the child had picked up new cases within a short period of time while on probation; (4) the child had failed to comply with orders associated with probation in that he did not do his community service or pay restitution; (5) the child did not comply with the treatment or the services resulting from his assessment recommending counseling, although he complied for four weeks with the CBIC program. The child

had stated during his psychological evaluation that he did not want to go to the program anymore because it was taking up all of his time; (5) the child's behavior had escalated over the past year, and he had picked up new cases; and (6) the child had shown little compliance with probation or other services.

**Factor 8 (met):** The child is emotionally, physically, or psychologically mature enough for the transfer. The court relied on the psychological evaluation for this factor, which stated the same.

**Factor 9 (met):** There is not sufficient time to rehabilitate the child within the juvenile system.

{¶ 13} In addition to the above nine factors, the juvenile court also considered admissions by appellant during the psychological evaluation, to wit: he was usually a ringleader in many aspects of his life; he left his home because he did not feel like being there or complying with orders anymore; he had a history of doing what he wanted how he wanted; he could not name his best strength and stated that he had no weaknesses; he bribed people to get what he wanted; and he did not suggest any changes when asked what he would like to change about himself.

{¶ 14} The juvenile court further considered the factors against transfer:

**Factor 1 (not met):** The victim induced or facilitated the act charged.

**Factor 2 (not met):** The child acted under provocation in allegedly committing the act charged.

**Factor 3 (not met):** The child was not the principal actor in the act charged. The evidence presented showed that the child was the one that had and used the firearm on that day.

**Factor 4 (not met):** The child did not cause physical harm to any person or property.

**Factor 5 (not met):** The child previously has not been adjudicated a delinquent child.

**Factor 6 (not met):  The child is not emotionally, physically, or psychologically mature enough for the transfer.

**Factor 7 (not met):  The child has a mental illness or intellectual disability.  The court noted that the child does have a lower IQ, but further stated that his psychological evaluation showed that appellant did not relate or communicate in a manner consistent with an intellectual disability.

**Factor 8 (not met):  There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides reasonable assurance of public safety.  The court noted that the child turned 16 years old soon after the commission of the offenses charged in this matter, but found that, because of the seriousness of the charge and the other factors discussed, the child could not be rehabilitated in the juvenile system.

{¶ 15} In addition, the juvenile court noted that appellant had turned 16 approximately two months after the offense, and he would have been automatically transferred had he been 16 at the time.  After considering all of the factors and additional information, the juvenile court determined that appellant could not be rehabilitated in the juvenile system and that he should be subjected to more adult sanctions.

{¶ 16} Appellant was bound over to the general division, where the grand jury returned a five-count indictment for appellant and his codefendant.  Appellant was charged with one count of murder, an unclassified felony, in violation of R.C. 2903.02(A); one count of murder, an unclassified felony, in violation of R.C. 2903.02(B); one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(1); one count of felonious assault, a felony of the second degree; and one count of receiving stolen property, a felony of the fourth degree, in

violation of R.C. 2913.51(A). Counts 1 through 4 also each contained both one- and three-year firearm specifications under R.C. 2941.141(A) and 2941.145(A).

{¶ 17} Appellant ultimately entered a guilty plea to involuntary manslaughter, with a three-year firearm specification, and receiving stolen property of a motor vehicle. Pursuant to the sentencing provisions of the Reagan Tokes Act, appellant was sentenced to 10 to 15 years in prison for the involuntary manslaughter charge, 3 years on the firearm specifications, and 18 months for the receiving stolen property charge, to run concurrently.

{¶ 18} Appellant appealed his conviction and sentence, raising four assignments of error for our review:

> 1. Appellant was denied procedural due process under the 14th Amendment and Article One Section 16 of the United States and Ohio Constitution, respectively, when the juvenile court held a probable cause determination and admitted hearsay evidence in violation of the Rules of Evidence, whereas a similarly situated adult would be permitted a preliminary hearing to determine probable cause at which the Rules of Evidence would apply.
>
> 2. The juvenile court abused its discretion when it found appellant was not amenable to rehabilitation under the juvenile justice system.
>
> 3. Appellant's counsel was ineffective when he failed to object to evidence in the probable cause hearing.
>
> 4. The trial court's sentence to an indefinite prison term of 10 to 15 years under Reagan Tokes is unconstitutional.

## II. Law and Analysis

### A. Hearsay Evidence

{¶ 19} Appellant argues that the trial court erred by allowing the detective's testimony, which constituted hearsay evidence. With regard to evidence permitted at a probable-cause hearing, this court has stated as follows:

> "'[A] probable cause hearing held before a juvenile court's transfer to adult court is a preliminary, non-adjudicatory proceeding[.]' *Matter of B.W.*, 2017-Ohio-9220, 103 N.E.3d 266, ¶ 18 (7th Dist.), citing *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), fn. 18, and *State v. Carmichael*, 35 Ohio St.2d 1, 7-8, 298 N.E.2d 568 (1973). *Accord State v. Gilbert*, 6th Dist. Lucas No. L-03-1273, 2005-Ohio-2350, ¶ 11; *In re A.M.*, 139 Ohio App.3d 303, 308, 743 N.E.2d 937 (8th Dist.2000); [*State v.*] *Whisenant*, 127 Ohio App.3d [75,] 85, 711 N.E.2d 1016 [(11th Dist.1998)]. This proceeding is non-adjudicatory because 'the juvenile court's function is not to determine whether the juvenile is guilty of the charge[,] but is to determine whether there is probable cause to believe the juvenile is guilty.' (Emphasis omitted.) *B.W.* at ¶ 18, citing *State v. Iacona*, 93 Ohio St.3d 83, 93, 752 N.E.2d 937 (2001)."

*State v. Burns*, 8th Dist. Cuyahoga No. 108468, 2020-Ohio-3966, ¶ 74, quoting *State v. Starling*, 2d Dist. Clark No. 2018-CA-34, 2019-Ohio-1478, ¶ 26.

{¶ 20} Because a probable-cause hearing is nonadjudicatory, the evidence presented at such hearing need not meet the same rigorous standards for admissibility at trial. *Burns,* citing *Whisenant* at 85.

{¶ 21} In the instant matter, appellant essentially asks us to overturn established law regarding evidence at a probable-cause hearing, arguing that admission of hearsay evidence violates appellant's right to confrontation. This argument lacks merit; however, because the right to confrontation exists as a trial

right.  *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).  A juvenile probable-cause hearing is not a trial because it does not '"find as a fact that the accused minor is guilty of the offense charged.  It simply finds the existence of probable cause to so believe[.]'"  *Iacona* at 93, quoting *State v. Whiteside*, 6 Ohio App.3d 30, 36, 452 N.E.2d 332 (3d Dist.1982).  In *Barber*, the United States Supreme Court recognized this difference when it determined that a defendant's cross-examination of a witness during his bindover hearing would not have satisfied his Confrontation Clause right to confront the witness at the subsequent trial.  The court reasoned,

> [The right to confrontation] includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness.  A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial.

*Barber* at 725.

{¶ 22} The Sixth District has further noted that

> [c]onsistent with *Barber*, federal courts have repeatedly recognized that the Sixth Amendment confrontation right does not apply to preliminary hearings.  *See U.S. v. Colasuonno*, 697 F.3d 164, 177 (2d Cir.2012) ("[T]he full protections of the Confrontation Clause do not apply to preliminary hearings."); *Peterson v. California*, 604 F.3d 1166, 1169-1170 (9th Cir.2010) (under Supreme Court's Confrontation Clause jurisprudence, defendant was not constitutionally entitled to confront witnesses at his preliminary hearing, and the admission of hearsay statements at a preliminary hearing does not violate the confrontation clause); *U.S. v. Andrus*, 775 F.2d 825, 836 (7th Cir.1985) ("The right to confrontation applies when the ability to confront witnesses is most important—when the trier of fact determines the ultimate issue of fact. Consequently, the sixth amendment does not provide a confrontation right at a preliminary hearing."); *U.S. v.*

*Harris*, 458 F.2d 670, 677 (5th Cir.1972) ("There is no Sixth Amendment requirement that [defendants] also be allowed to confront [witnesses] at a preliminary hearing prior to trial.").

*State v. Garner*, 6th Dist. Lucas No. L-18-1269, 2020-Ohio-4939, ¶ 19-20.

**{¶ 23}** Accordingly, appellant's right to confrontation did not apply at the probable-cause hearing, and thus, appellant was not denied due process. Hearsay evidence was admissible in the probable-cause hearing, and we decline appellant's invitation to overrule established law on this issue. Accordingly, the trial court did not err, and appellants first assignment of error is overruled.

## B. Amenability to Rehabilitation

**{¶ 24}** In his second assignment of error, appellant argues that the trial court erred when it determined that he was not amenable to rehabilitation in the juvenile court system.

**{¶ 25}** The juvenile division of the court of common pleas has exclusive original jurisdiction to hear complaints that allege a juvenile is delinquent because he committed an offense that would be a crime if committed by an adult. *State v. Fryerson*, 8th Dist. Cuyahoga No. 71683, 2000 Ohio App. LEXIS 456, 9 (Feb. 10, 2000). However, certain juvenile court cases can be transferred for criminal prosecution to the general division of the common pleas court. This transfer is also referred to as a bindover transfer to the adult court. R.C. 2152.12(A)(1). There are two types of bindover transfers: mandatory and discretionary. R.C. 2152.10. The instant matter involves a discretionary bindover transfer.

**{¶ 26}** Following a hearing where the state introduces evidence showing probable cause that the child committed the alleged crimes, the child is eligible for a discretionary bindover pursuant to R.C. 2152.10(B). *See* Juv.R. 30. All children eligible for a discretionary bindover are not transferred for prosecution in the adult court. A juvenile court must first follow the procedures outlined in R.C. 2152.12 to determine if transfer is appropriate. *Johnson v. Sloan*, 154 Ohio St.3d 476, 2018-Ohio-2120, 116 N.E.3d 91, ¶ 6.

**{¶ 27}** In addition to the completion of a court-ordered investigation pursuant to R.C. 2152.12(C), the juvenile court must hold an amenability hearing and make the following determinations before transferring jurisdiction to the adult court:

(1) The child was fourteen years of age or older at the time of the act charged.

(2) There is probable cause to believe that the child committed the act charged.

(3) The child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions.

R.C. 2152.12(B); Juv.R. 30(C).

**{¶ 28}** To satisfy the third prong of R.C. 2152.12(B) and establish a child's amenability to the juvenile system, the juvenile court considers the applicable factors listed in R.C. 2152.12(D) — those factors that indicate a child's case *should* be transferred — with the appropriate factors identified in R.C. 2152.12(E) that

weigh *against* the transfer of the juvenile case. The record must reflect the applicable factors considered by the juvenile court. *Id.*

{¶ 29} Juvenile courts have wide discretion to transfer their cases to adult courts, and on appeal, a juvenile court's decision binding over a case is reviewed under an abuse of discretion standard. *State v. Poole*, 8th Dist. Cuyahoga No. 98153, 2012-Ohio-5739, ¶ 6. Where the juvenile court weighed the statutory factors and the record shows a rational basis for the court's findings regarding those statutory factors, an appellate court cannot conclude the trial court abused its discretion when it transferred jurisdiction. *Id.* "'[I]f there is some rational and factual basis to support the trial court's decision, [an appellate court is] duty bound to affirm it regardless of [its] personal views of the evidence.'" *State v. Johnson*, 2015-Ohio-96, 27 N.E.3d 9, ¶ 36 (8th Dist.), quoting *State v. West*, 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285, ¶ 10 (4th Dist.).

{¶ 30} At the amenability hearing, the state presented the testimony of two witnesses: appellant's probation officer, who testified that appellant was amenable to rehabilitation in the juvenile system, and the victim's sister, who testified as to the psychological harm suffered by her family as a result of appellant's actions. At the conclusion of the hearing, the juvenile court reviewed each of the nine factors in favor of transfer and the eight factors against finding appellant not amenable.

{¶ 31} Appellant argues that the trial court abused its discretion by finding that he was not amenable to rehabilitation in the juvenile system. Appellant asserts that he only had eleven months in the juvenile system, which he argues was a very

short time to receive programming. Appellant was referred to just two programs: an Alternative Case Planning Committee meeting, which he failed to attend, and CBIC, where he had some success.

{¶ 32} Moreover, appellant argues that he did not have a significant history in the juvenile court system. The court acknowledged the same at his arraignment. While appellant committed four crimes in the eleven months from his first involvement to the instant crime, he maintains this constituted just "one bad year."

{¶ 33} The record in this matter reflects that the juvenile court weighed the statutory factors and outlined the evidence in support of each factor. It ultimately determined that six out of nine factors in favor of transfer were met, and none of the factors weighing against transfer were satisfied. While appellant argues that this was just "one bad year" and that he did not have a "significant history" with the juvenile court, the record demonstrates that appellant's crimes were escalating and that he did not appear to have much regard for orders of the court or the programs meant to help him. We therefore find that there exists a rational basis for the court's determination and cannot say that the juvenile court abused its discretion. Appellant's second assignment of error is overruled.

### C. Ineffective Assistance of Counsel

{¶ 34} In his third assignment of error, appellant argues that his counsel was ineffective when he failed to object to the admission of hearsay evidence during the probable-cause hearing and failed to object to the lack of foundation to the identification of appellant by the detective at the hearing.

{¶ 35} Appellant has the burden of proving ineffective assistance of counsel over a strong presumption that a properly licensed trial counsel rendered adequate assistance. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). In order to demonstrate ineffective counsel, a defendant must show, not only that his counsel's representation was deficient, but also that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph two of the syllabus; *see also Strickland* at 687.

{¶ 36} We find appellant's argument lacks merit. We determined in our analysis of appellant's first assignment of error that hearsay evidence was permissible in the probable-cause hearing. A defense counsel's failure to object is not ineffective assistance of counsel if the evidence is admissible. *State v. Jackson*, 8th Dist. Cuyahoga No. 86105, 2006-Ohio-174, ¶ 87. As stated by the Supreme Court of Ohio, "counsel is not deficient for failing to raise a meritless issue." *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845, ¶ 117, citing *State v. Taylor*, 78 Ohio St.3d 15, 31, 676 N.E.2d 82 (1997). Accordingly, we do not find appellant's counsel deficient in his performance.

{¶ 37} Appellant additionally argues that his counsel was ineffective in failing to object when the detective testified at his probable-cause hearing regarding a video for which he neither laid a foundation nor testified that it was a true and accurate representation of the scene depicted. He further contends that his counsel should have objected to the detective's identification of appellant in the video despite the fact that the detective was not present at the scene of the crime.

{¶ 38} We note that the record reflects that the detective was asked if the video clips "fairly and accurately depict what [he] collected that day," to which he responded in the affirmative. Regardless, we again find no merit in appellant's argument. As fully explained above, a juvenile probable-cause hearing is not a trial and exists solely to determine whether there was probable cause that a crime occurred — not whether appellant committed the crime. The Rules of Evidence do not apply to probable-cause hearings, and we cannot find counsel ineffective for failing to object to testimony and evidence that were ultimately admissible.

{¶ 39} Appellant's third assignment of error is therefore overruled.

### D. Sentencing Under the Reagan Tokes Act

{¶ 40} In his final assignment of error, appellant argues that his sentence of an indefinite prison term of 10 to 15 years under the Reagan Tokes Act was unconstitutional.

{¶ 41} Appellant does not make any specific arguments in support of his assertion that the Reagan Tokes Act is unconstitutional. Instead, he merely notes that this court reversed an indefinite sentence in *State v. Daniel*, 8th Dist. Cuyahoga

No. 109583, 2021-Ohio-1963, holding that the Reagan Tokes Act was unconstitutional, and urges us to do the same in the instant matter.

{¶ 42} This court has recently conducted en banc review of the constitutionality of the Reagan Tokes Act. *See State v. Delvallie*, 8th Dist. Cuyahoga No. 109315 2022-Ohio-470. In *Delvallie*, we overruled challenges to the constitutionality of the Reagan Tokes Act (enacted through S.B. 201) and overruled *Daniel*. Thus, pursuant to *Delvallie*, we overrule appellant's fourth assignment of error.

### III. Conclusion

{¶ 43} The trial court did not err in allowing hearsay evidence during the probable-cause hearing or in finding that appellant was not amenable to rehabilitation in the juvenile justice system. Further, appellant's trial counsel was not ineffective by failing to object to evidence during the probable-cause hearing. Finally, this court has determined that the Reagan Tokes Act is constitutional; thus, the trial court did not err in sentencing appellant under this statute.

{¶ 44} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MARY EILEEN KILBANE, J., CONCUR


N.B. Judge Mary Eileen Kilbane joined the dissenting opinion by Judge Lisa B. Forbes and the concurring in part and dissenting in part opinion by Judge Anita Laster Mays in *Delvallie* and would have found the Reagan Tokes Law unconstitutional.